John ADAMS, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 1184S455.

Supreme Court of Indiana.

June 29, 1987.

William L. Touchette, Appellate Div., Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant, John Adams, a/k/a William Lee Samuels, was convicted by a Lake County jury of robbery, a class B felony. The trial court sentenced Adams to twenty (20) years imprisonment. In this direct appeal, Adams raises only one issue for our review: whether the trial court erred in conducting the trial *absente reo* because of an improper determination of Adams' competency to stand trial.

The facts are as follows. On July 1, 1983, at approximately 7:30 p.m., the victim and her mother were driving the victim's car down an alley near 171st Street in Hammond, Indiana. Two men in another car drove past the victim's car, then stopped, blocking the alley. The two got out of their car and approached the victim's car. One man was carrying a gun. The men ordered the victim and her mother out of the car, but told the victim to leave her purse in the car. The man with the gun got in the victim's car and drove away.

The car was spotted later traveling in city traffic by police. While the car was stopped at a light, three police officers approached the car on foot and ordered the driver to exit the car. The driver got out and went to the rear of the car where he was handcuffed. The driver was identified as Adams. After the robbery, the victim identified Adams as the man who had the gun and drove away in her car. Adams also was found in possession of bullets which were of the same caliber as the gun found in the victim's car after the arrest.

During Adams' incarceration before trial, he filed well over ten *pro se* motions with the trial court. He did this despite having had a public defender appointed for him. The majority of these *pro se* motions requested the charges against Adams be dropped, that he be released on his own recognizance, or that his bail be reduced. He also filed *pro se* motions requesting a speedy trial, the production of court documents and transcripts, pre-trial discovery, and funds with which to buy legal research materials. Adams' appointed counsel then filed a motion of insufficient comprehension.

The trial court appointed two doctors to examine Adams to determine his ability to understand the nature of the proceedings against him. One found Adams competent, one found Adams incompetent. The trial court then appointed another doctor who examined Adams and found him competent to stand trial.

Adams continued to file *pro se* motions with the court. His public defender withdrew and another was appointed. Adams filed more *pro se* motions including motions for change of venue, change of judge, dismissal of counsel, and waiver of trial by jury.

On the day *voir dire* was scheduled, Adams refused to leave his jail cell. He claimed he was physically and mentally unable to attend his trial because of his medical condition. The trial court was forced to conduct a hearing in Adams' jail cell.

Adams complained of various physical ailments, including "flashing" in his eyes, backaches, and headaches. The court questioned him extensively on his physical condition, the treatment he had received, and his apparent decision to waive his right to be present at trial. A registered nurse testified she examined Adams that morning and checked his blood pressure, pulse, eyes, ears, chest, nose, throat, and abdomen. She found no physical reason which would prevent Adams from appearing in court.

The court found that Adams waived his right to be present at his trial. The court's decision was based on the nurse's testimony, and the reports filed by the three appointed doctors, two of which found Adams competent to stand trial. The court also took into consideration the sheer number of *pro se* motions Adams filed seeking various legal remedies. The court concluded that Adams had full comprehension of the proceedings against him, and that his "inability" to leave his jail cell was a ploy to delay the trial. The trial was conducted *absente reo.*

Adams argues on appeal that the trial court erred in 1) failing to conduct a competency hearing pursuant to Ind.Code § 35–36–3–1; 2) finding him competent to stand trial; and 3) finding he waived his right to attend his trial. Adams claims that because he was incompetent, he could not waive his right to be present at his trial. Adams claims the following are indicative of his lack of competency; a) his first court appointed attorney filed a motion for insufficient comprehension, b) one of three doctors found him incompetent, c) he failed to attend his trial because of unsubstantiated physical ailments, d) he insisted in the face of unimpeachable physical evidence that he was not known as "Willie Samuels," and e) only a "lunatic" would intentionally provoke a judge by filing countless *pro se* motions with little or no merit. Adams argues that all this proves he was incompetent to stand trial, and the trial court erred in finding he waived his right to be present at his trial. We disagree.

■ Ind.Code § 35–36–3–1 (Burns 1986) provides:

(a) If at any time before the final submission of any criminal case to the court or the jury trying the case, the court has reasonable grounds for believing that the defendant lacks the ability to understand the proceedings and assist in the preparation of his defense, the court shall immediately fix a time for a hearing to determine whether the defendant has that ability. The court shall appoint two (2) or three (3) competent, disinterested psychiatrists, psychologists endorsed by the Indiana state board of examiners in psychology as health service providers in psychology, or physicians, at least one (1) of whom must be a psychiatrist, who shall examine the defendant and testify at the hearing as to whether he can understand the proceedings and assist in the preparation of his defense.

We have held, however, that the right to a competency hearing is not absolute. *Brown v. State* (1985), Ind., 485 N.E.2d 108, 110; *Goodman v. State* (1983), Ind., 453 N.E.2d 984, 985. A competency hearing is required under Ind.Code § 35–36–3–1(a) only when the trial court has "reasonable grounds" for believing the defendant may not be competent to stand trial. *Hadley v. State* (1986), Ind., 496 N.E.2d 67, 71; *Goodman*, 453 N.E.2d at 986. The test for competency is whether the defendant has sufficient present ability to consult with defense counsel with a reasonable degree of rational understanding, and whether the defendant has a rational as well as a factual understanding of the proceedings against him. *Brown*, 485 N.E.2d at 110; *Mato v. State* (1982), Ind., 429 N.E.2d 945, 946. The trial court's determination will be reviewed only for an abuse of discretion. *Hadley*, 496 N.E.2d at 71. Where there is conflicting medical evidence as to the defendant's competency, this court will not overturn the trial court's decision where reasonable grounds exist upon which to base the determination that the defendant was competent to stand trial. *Ritchie v. State* (1984), Ind., 468 N.E.2d 1369, 1371; *McMahan v. State* (1978), 269 Ind. 566, 382 N.E.2d 154.

■ We think the trial court's decision that Adams was competent to stand trial was justified and reasonable. Two doctors found Adams competent, even though another did not. This alone is enough to support the trial court's decision. Since the trial court did not have reasonable grounds for believing Adams was incompetent, there was no need to conduct a competency hearing.

The fact that Adams was able to file so many different *pro se* motions indicates to us that he had a very rational under-

 

standing of the proceedings against him. One incompetent to understand the nature of the criminal court process would likely be unable to file the type of legal pleadings that Adams filed *pro se*. Whether it was in his best interest to do so may be questioned. It appears he knew what he was doing, but merely misunderstood the effect of his follies. We have no question that Adams had a clear understanding of the criminal proceeding against him.

In addition, Adams' decision to proceed as he did against his attorney's advice is not indicative of any lack of competence. We have held that a defendant who declines to help his attorney in preparing a defense is perhaps unwise, or even foolish, but he is not necessarily incompetent on that basis alone. *Ferry v. State* (1983), Ind., 453 N.E.2d 207, 212.

■ Next, we must consider whether Adams waived his right to be present at his trial.

Both the Sixth Amendment of the United States Constitution and Article 1, § 13 of our Indiana Constitution guarantee the right of an accused to be present during his trial. *Cape v. State* (1980), 272 Ind. 609, 611, 400 N.E.2d 161, 163. We have held consistently that a defendant may waive his right to be present at his trial. *Blatz v. State* (1985), Ind., 486 N.E.2d 990; *Martin v. State* (1984), Ind., 457 N.E.2d 1085; *Faison v. State* (1981), Ind., 428 N.E.2d 784; *Shepler v. State* (1980), 274 Ind. 331, 412 N.E.2d 62. Waiver occurs where a defendant fails to appear at his trial knowing he has an obligation to appear. *Blatz*, 486 N.E.2d at 991; *Bedgood v. State* (1985), Ind., 477 N.E.2d 869, 871.

Here, Adams refused to leave his jail cell to attend his trial. Adams complained of physical ailments. He was examined by a nurse, who found nothing that would prevent him from attending his trial. Our review of the record leads us to conclude that the trial court was justified in finding that Adams voluntarily chose not to attend his trial. We find no error in the trial court's proceeding with the trial *absente reo*.

The trial court is affirmed.

SHEPARD, C.J., and GIVAN and DICKSON, JJ., concur.

DeBRULER, J., concurs in result without opinion.