Paul Douglas HOUSTON, Appellant,

v.

STATE of Indiana, Appellee.

No. 12S00–8805–CR–493.

Supreme Court of Indiana.

April 24, 1990.

Frank E. Spencer, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in appellant's conviction of Count I, Trafficking in Marijuana, a Class D felony, for which he received a sentence of four (4) years, which was enhanced by eight (8) years due to a finding that he is an habitual offender, and Count II, Possession of Marijuana, a Class A misdemeanor, for which he received a sentence of one (1) year, to be served concurrently with his sentence under Count I.

The facts are: On October 29, 1985, appellant and John Montalvo visited appellant's brother in the Clinton County Jail. Jail officers who were observing appellant and Montalvo through monitors became suspicious of their activity while they were in the visitor's booth. It seemed to the officers that Montalvo attempted to block the view of the monitoring camera while appellant looked and felt around the visitor's booth and underneath a shelf in the booth.

After their visit concluded, appellant and Montalvo were detained while the visitor's booth was searched. Officials found taped to the bottom of the shelf a cellophane cigarette wrapper which contained a green leafy substance and some cigarette papers. A field test kit revealed that the substance was marijuana.

■ Appellant argues the trial court denied him his right to a fair trial by limiting the function of his court-appointed attorney to that of an advisory counsel only.

The record shows that appellant's first court-appointed counsel withdrew from his case because he was not able to get along with appellant. Appellant's second counsel withdrew from the case because appellant did not want him. Appellant also refused to cooperate with his third appointed attorney and rejected him. On June 30, 1987, the trial court noted that the case had been pending since October of 1985 and it would go to trial in September of 1987 with no continuances. Appellant agreed to employ his own counsel within ten days and be ready to proceed with trial in September. The trial court warned appellant that if he failed to retain his own counsel, he would proceed with an advisory counsel only. Appellant failed to employ private counsel, and the trial court reappointed appellant's third counsel to act in an advisory capacity.

Before appellant's trial began, the court advised him that he could either represent himself or his third court-appointed attorney could represent him with what little preparation he had undertaken. Appellant represented himself at trial while his counsel answered his questions and advised him about the cross-examination of witnesses and final argument.

Appellant contends he was prejudiced because no objections were made to improper statements made by the prosecutor during final argument or to the police officer's testimony when no foundation was made to establish that he was an expert witness. He asserts that his defense could only have been prejudiced by the fact that he had to attempt to persuade the jury that the evidence did not support his conviction.

We find that the trial court did not err in allowing appellant to represent himself at trial. Appellant's repeated refusal to cooperate with counsel and failure to retain private counsel enabled him to frustrate the judicial process and avoid being brought to trial. Appellant was adequately warned by the trial court that if he chose not to employ private counsel, he would represent himself and would be given advisory counsel. Because appellant did not retain private counsel, he must have elected to proceed with advisory counsel only. He was again given the chance to have his court-appointed counsel represent him at trial, but he refused. From these facts, we must assume that appellant elected to waive his right to counsel and proceed *pro se*.

■ A defendant has the right to appear at trial *pro se*. *Webb v. State* (1980), 274 Ind. 540, 412 N.E.2d 790. Because the defendant is the one who must suffer the consequences of his decision as to counsel, he is entitled to choose his advocate—a lawyer or himself. *Koehler v. State* (1986), Ind., 499 N.E.2d 196. However, if he proceeds *pro se*, he accepts the burdens and hazards incident to his position. *Engle v. State* (1984), Ind., 467 N.E.2d 712. The only inquiry that this Court will make is whether appellant waived his right to counsel knowingly and intelligently. *Webb, supra*.

The record shows that the trial court clearly presented to appellant his choices of proceeding with or without counsel and appellant chose the latter. We find that he knowingly and intelligently waived his right to counsel and must suffer any negative consequences resulting from his decision.

Appellant asserts the evidence is insufficient to support his conviction. He first argues that there was no evidence that he had possession of the package found under the shelf, and a prior visitor could have left it there before he entered the visitor's booth.

■ On a claim involving the sufficiency of the evidence, this Court will not reweigh the evidence or judge the credibility of the

witnesses. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670. Circumstantial evidence may be sufficient to support a conviction, and in such cases, it is not necessary that every reasonable hypothesis of innocence has been overcome, but only that an inference which supports the jury verdict may reasonably be drawn. *Collins v. State* (1988), Ind., 521 N.E.2d 682; *Brooke v. State* (1987), Ind., 516 N.E.2d 9.

In appellant's case, the record shows that prior to visiting hours the visiting area was thoroughly searched; a jail official testified that prior to appellant entering the visitor's booth, the area was scanned and the package was not under the shelf at that time; during appellant's visit, it appeared to the jail officials that Montalvo was blocking the camera while appellant looked under the shelf and was doing something with his hands; immediately after appellant left the area, the package was found under the shelf; and Montalvo testified that he saw appellant doing something suspicious and appellant asked him to stand beside him, but he did not watch because he did not want to get involved. From these facts, the jury could reasonably have concluded that it was appellant who left the package under the shelf.

Appellant also argues the evidence is insufficient because it was not proven that the substance in the package was marijuana. He states that there was no evidence establishing that the field test conducted upon the substance was conclusive, and he challenges the qualifications of the police officer who conducted the test.

The Chief Deputy of the Clinton County Sheriff's Department testified that he had made arrests for the possession of marijuana and had conducted several field tests on marijuana in the past. He explained the process of conducting a field test and stated that the green leafy substance found under the shelf tested positively for marijuana. Additionally, the package contained several cigarette rolling papers.

In a discussion concerning the chain of custody, this Court held in *Bellamy v. State* (1972), 259 Ind. 254, 286 N.E.2d 401 that the results of a field test alone were sufficient to support the court's finding that appellant was dispensing drugs. The qualifications of the Chief Deputy in performing the test were presented to the jury and went to the weight of his testimony. We find that sufficient evidence supported the jury's conclusion that the substance found under the shelf was marijuana.

The trial court is affirmed.

SHEPARD, C.J., PIVARNIK and DICKSON, JJ., concur.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

Appellant claims on appeal that the evidence serving to identify the substance as marijuana was insufficient. In determining this question, we do not weigh the evidence nor resolve questions of credibility, but look to the evidence and reasonable inferences therefrom which support the verdict. *Smith v. State* (1970), 254 Ind. 401, 260 N.E.2d 558. Circumstantial evidence is no different than other evidence for this purpose. The conviction will be affirmed if there is evidence of probative value from which a reasonable trier of fact could infer guilt beyond a reasonable doubt. *Taylor v. State* (1973), 260 Ind. 64, 291 N.E.2d 890; *Glover v. State* (1970), 253 Ind. 536, 255 N.E.2d 657.

The State's exhibit involved is an empty cigarette wrapper found taped beneath a shelf. It held some loose material described by an officer as "a green leafy substance" and a few cigarette papers for rolling cigarettes. The officer who tested the substance testified that it "appeared to be marijuana." His knowledge of marijuana was gained in several arrests for possession of marijuana and several field tests of it. He got a field test kit from an office in the jail, placed some of the substance inside a plastic test kit, and slid a piece of plastic over it to seal the bag. His testimony continued:

A. There's three different ampules in there that you break, one at a time until the third is broke and it gives you the results, one way or another.

Q. It tells you positive or negative for marijuana?

A. Right.

    *     *     *     *     *     *

Q. What was the result of the field test on that particular substance?

A. It tested positive for marijuana.

Q. O.K., and that is consistent with your visual identification of this substance, as well?

A. Yes it is.

The evidence tending to show the substance to be marijuana thus consists of its surreptitious handling, its presence along with paraphernalia for smoking, together with the the results of its testing. From this evidence, a rational trier of fact could not conclude to a moral certainty beyond a reasonable doubt that the substance was marijuana, and therefore the conviction should not be affirmed.

The opinions of the officers were based upon very limited experience with marijuana and solely upon their visual perceptions resulting from their inspection. The tester was not shown to have been trained in the use of the field test kit nor to have an appreciation of its reliability or processes. The appellation "field" carries with it the connotation that it is to be employed by "field" personnel without scientific or laboratory skills for making quick decisions such as whether probable cause exists. It also means that the test carries with it a substantial risk of error.