Charles N. SENIOURS, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 03A05–9307–CR–00260.

Court of Appeals of Indiana,
Fifth District.

May 31, 1994.

&#8258;641.4(2)

James Long, Columbus, for appellant.

Pamela Carter, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

SHARPNACK, Chief Judge.

Charles N. Seniours appeals his conviction for child molesting as a Class C felony. We reverse and remand for a new trial.

Seniours presents two issues for our review. Because we reverse, we need only address the dispositive issue of whether the trial court erred in failing to determine whether Seniours knowingly, intelligently, and voluntarily waived his right to counsel.

The facts reveal that Seniours was charged with one count of child molesting on March 30, 1992. Seniours entered a plea of not guilty on April 8, 1992, and the matter was set for trial for August 4, 1992. On May 6, 1992, G. Terrence Coriden entered his appearance for Seniours as private counsel. On July 21, 1992, Coriden filed a motion to withdraw appearance, stating that Seniours had insufficient funds to retain an attorney and needed a court-appointed attorney. On July 30, 1992, the Court conducted a hearing on Coriden's motion. At the hearing, Coriden testified that after an initial payment of $650.00, he had received none of the $100.00 per week installments agreed to by Seniours. Seniours testified that he earned $270.00 per week working full time, that he had to pay $70.00 child support and $25.00 rent out of that money, and that he would be unable to pay $8,000 for an attorney. The court granted Coriden's motion to withdraw, but found that Seniours did not qualify to have a public

defender represent him. The court continued the trial until December 8, 1992, to allow Seniours time to find a new attorney.

On November 9, 1992, at a pre-trial conference in the matter, Seniours informed the court that he had not yet hired counsel. Seniours testified that he had found an attorney to represent him for $3,500.00 who would accept half that amount before the pretrial conference, but Seniours was unable to meet with the attorney because of logistical difficulties on both sides. He further testified that the attorney called him on the day of his appointment and advised that he could not take the case because he was "back [sic] up on his other cases." Record, p. 94. Seniours testified that he had the money to make the initial payment. The court set another hearing and provided Seniours with a list of eight attorneys who handled cases of his type.

On November 23, 1992, a further status hearing was held. Seniours had not yet found an attorney, but claimed to have an appointment to see one that week. The court set another hearing for the following week.

On November 30, 1992, Seniours informed the court that he could not afford an attorney because he was so far into debt that he could not see his way out. Seniours claimed to have spoken with several attorneys and to have found one who agreed to two payments of $1,500 each, but who could not take the case until after January. The court pointed out that the State had agreed to continue the case to February, and Seniours indicated that the continuance would help him in hiring a lawyer. The court set another hearing for January.

At the January 11, 1993, status hearing, Seniours informed the court that he still did not have an attorney because he was being forced to move. Seniours told the court that he earned $9.00 per hour, but that he took home only $100.00 per week after deductions. The court refused to set another hearing, stating:

"Now, you're making $9.00 an hour and I don't know how serious you consider this to be, but I'm telling you this is very serious and you need to make more of an effort to secure counsel because I'm going

to go ahead and proceed to trial and find that you have not found counsel and that you should be able to, given the cash bond that you have filed, given the fact that you had fifteen hundred dollars saved towards this and you should be able to save more than that towards this because this should be your number one priority right now. So, I cannot find based upon the testimony that I've had here today and what I've had before, that you're eligible for a court appointed attorney and I'm not going to appoint one to represent you at this point."

Record, p. 112–13.

On February 18, 1993, the trial was held, with Seniours proceeding pro se. The jury found Seniours guilty as charged. On April 22, 1993, Seniours was sentenced to four years imprisonment, with two and one-half years suspended.

Seniours argues that the trial court erred in permitting him to proceed pro se without first determining that he knowingly, willingly, and voluntarily waived his constitutional right to assistance of counsel.

■■■ Under Indiana law, a strict standard will be applied to a determination of whether a defendant has waived the right to counsel.

" 'The right to counsel can only be relinquished by a knowing, voluntary, and intelligent waiver of the right.' *Dowell v. State* (1990), Ind.App., 557 N.E.2d 1063. Whenever a defendant proceeds *pro se,* it is incumbent upon the trial court to determine if the waiver of the right to counsel is made knowingly and voluntarily. *Kirkham v. State* (1987), Ind.App., 509 N.E.2d 890, 892. To make such a determination, the trial court must conduct a hearing to determine the defendant's competency to represent himself and also to establish a record of the waiver. *Dowell, supra.* The record must show that the defendant was made aware of the 'nature, extent, and importance' of the right to counsel and the necessary consequences of waiving such a right. *Kirkham, supra.* 'Merely making the defendant aware of his constitutional right is insufficient.' *Id.* '[T]he trial court

should inquire into the educational background of the defendant, the defendant's familiarity with legal procedures and rules of evidence, and additionally, into the defendant's mental capacity if there is any question as to the defendant's mental state.' *Dowell, supra.* However, the trial court need not specifically inquire into each of the guidelines enunciated in *Dowell.* It is sufficient if the record reveals that, after being apprised of the advantages of representation by counsel and the pitfalls of self-representation, a defendant voluntarily, knowingly, and intelligently chooses self-representation. *Leonard v. State* (1991), Ind., 579 N.E.2d 1294."

*Martin v. State* (1992), Ind.App., 588 N.E.2d 1291, 1293.

■ The facts of the present case show that the trial court repeatedly urged Seniours in no uncertain terms to secure an attorney, provided him with lists of attorneys to contact, and postponed trial several times in order to give Seniours every opportunity to have benefit of counsel. The court hammered upon the seriousness of the charges and the potential fines and terms of imprisonment facing Seniours. Indeed, it may be said that prior to trial the court bent over backwards to accommodate Seniours and to comply with the requirements of due process. Nonetheless, there is nothing in the record to show that Seniours voluntarily, knowingly, and intelligently chose to represent himself.

During the course of the status hearings, the possibility that trial would proceed whether or not Seniours employed counsel is mentioned twice, but in terms that do not suggest the consequences of a decision to proceed pro se. On November 3, 1992, the judge stated, "I understand that you're in debut [sic], but I ... this is going to have to be one of your priorities or you're going to have to handle this on your own." Record, p. 90. On January 11, 1993, the court stated, "I'm telling you this is very serious and you need to make more of an effort to secure counsel because I'm going to go ahead and proceed to trial and find that you have not found counsel." Record, p. 111. Following the transcript of the January 11, 1993, hearing, the record jumps to the transcript of the

trial, at which Seniours acts the role of his own attorney. The record contains no reference whatsoever to Seniours' choice to represent himself and no inquiry by the court concerning Seniours' capacity to do so. Moreover, there is no evidence in the record that the court inquired into Seniours' background and familiarity with legal procedures; that he had been apprised of the advantages of representation by counsel or the pitfalls of self-representation; or that Seniours voluntarily, knowingly, and intelligently chose to proceed pro se. The most that may be inferred from Seniors' participation in the trial is his acquiescence, but no evidence of an affirmative waiver exists.

The ultimate question before us, then, is whether this acquiescence and Seniours' conduct in failing to secure counsel constitute a waiver of his right to counsel.

As in *Fitzgerald v. State* (1970), 254 Ind. 39, 257 N.E.2d 305, "[t]he absence of counsel in this case is directly attributable to the appellant's own conduct," and

"it would be unreasonable to fault anyone but the appellant himself for the failure to have the assistance of counsel at his trial. There are many instances in the law in which one may waive a particular right by his own conduct with respect to that right, and were no other considerations present in this case, we would be inclined to characterize the conduct of the appellant as amounting to just such a waiver. Ordinarily courts are unwilling to reward a litigant for his own misconduct.

Notwithstanding the above, in the case at bar we are dealing with no ordinary right but rather with a constitutional right of fundamental importance—the right to the assistance of counsel. Constitutional rights have occupied a sacred position in our legal system and rightfully so. The concepts, principles and rights embodied in both the United States and Indiana Constitutions command the most sensitive protection the courts can provide. In fact, protection of all constitutional rights is our most solemn duty.

Recognizing this duty, both this court and the U.S. Supreme Court have insisted that constitutional rights may not be

waived except by the appellant himself, knowingly, intelligently and understandingly. A heavy burden is borne by the state whenever it is claimed or alleged that a constitutional right of a defendant has been waived. A silent record is not enough."

*Id.* 257 N.E.2d at 311.

The record in the present case is silent as to any express waiver of Seniours' right to representation. The record is replete, however, with examples of conduct on Seniours' part that may appropriately be described as "passive resistance"; by his inaction, Seniours clearly frustrated and delayed the process of justice for several months. The State argues that Seniours' refusal to make a serious effort to retain counsel in the face of repeated warnings from the court gives rise to an assumption that Seniours elected to waive his right to counsel and proceed *pro se.*

In support of this argument, the State cites *Houston v. State* (1990), Ind., 553 N.E.2d 117, where the court assumed from a defendant's refusal to cooperate with court-appointed counsel that he had elected to waive his right to counsel. *Id.* at 118. In *Houston,* the trial court warned the defendant that if he failed to retain his own counsel, he would proceed with advisory counsel only. *Id.* When the defendant failed to employ private counsel, the court appointed an attorney to serve in an advisory capacity. *Id.* Then,

> "[b]efore appellant's trial began, the court advised him that he could either represent himself or his . . . court-appointed attorney could represent him with what little preparation he had undertaken. Appellant represented himself at trial while his counsel answered his questions and advised him about the cross-examination of witnesses and final argument.

*   *   *   *   *   *

> We find that the trial court did not err in allowing appellant to represent himself at trial. Appellant's repeated refusal to cooperate with counsel and failure to retain private counsel enabled him to frustrate the judicial process and avoid being brought to trial. *Appellant was adequate-*

> *ly warned by the trial court that if he chose not to employ private counsel, he would represent himself and would be given advisory counsel.* Because appellant did not retain private counsel, he must have elected to proceed with advisory counsel only. *He was again given the chance to have his court-appointed counsel represent him at trial, but he refused.* From these facts, we must assume that appellant elected to waive his right to counsel and proceed *pro se.*

*   *   *   *   *   *

> *The record shows that the trial court clearly presented to appellant his choices of proceeding with or without counsel and appellant chose the latter.* We find that he knowingly and intelligently waived his right to counsel and must suffer any negative consequences resulting from his decision."

*Id.* (emphasis added). In *Houston,* then, the assumption of waiver is based upon a showing in the record of the court's express offer of the choice of proceeding pro se or with counsel and upon the defendant's express refusal of counsel. *Houston* does not stand for the proposition that a defendant's conduct or passive resistance to the court may give rise to an assumption of waiver in the absence of advisements by the court regarding the consequences of proceeding without an attorney or a presentation of the choice to do so. *Houston* demands, at the very least, that the record reflect that the court has presented to the defendant the choices available to him with some minimal explanation of their meaning.

In *Leonard v. State* (1991) Ind., 579 N.E.2d 1294, decided more than a year after *Houston,* the Indiana Supreme court stated its belief that there should be no rigid judicial mandate

> "setting forth specific inquiries that a trial court is required to make before determining whether a defendant's waiver of right to counsel is knowing, intelligent, and voluntary. In this case, the record of the trial court's hearing was sufficient to establish that Leonard, after being apprised of the advantages of representation by

counsel and the pitfalls which he might experience if he insisted on self-representation, voluntarily, knowingly, and intelligently chose to represent himself with the stand-by assistance of counsel."

*Id.* at 1296. In *Leonard,* the defendant was held to have waived his right to counsel after an extended inquiry by the trial court.

"The trial court instructed Leonard that a person who represents himself has a 'fool for a client,' and that he would 'be a fool to sit there and ask [his] own questions.' The court also told him that it would not be to his advantage to represent himself, but that he would benefit by letting his attorney ask questions with his assistance. Leonard was informed that his questions might 'open up all sorts of things that otherwise wouldn't necessarily come in— like [his] criminal record.' He was made aware that an attorney screens questions in order to avoid asking questions that might open up past conduct and criminal records. Finally, the trial court instructed him that it would not be wise to represent himself, but that if he were 'dead certain' that he wanted to do it, that the trial court would have to allow it."

*Id.*

The present case may be distinguished from *Leonard* in that Seniours never expressed any desire to represent himself. It is not necessary that a defendant do so in order to establish waiver of the right to counsel, and it is consistent with the decisions in *Leonard* and *Houston* that a defendant need not respond to a court's inquiry concerning self-representation or even agree to undertake self-representation for waiver to occur. Absent a showing of incompetence, a defendant in Seniours' position who has

refused to employ counsel despite the court's entreaties need only be "apprised of the advantages of representation by counsel and the pitfalls which he might experience if he insisted on self-representation." *Id.* It is incumbent upon the court to ensure that the record reflects such a statement to the defendant, and it is this that the trial court failed to do in the present case.

In other circumstances, a defendant's conduct may constitute waiver of a constitutional right, such as a defendant's right to be present during his trial, which may be considered waived where a defendant fails to appear. *Adams v. State* (1987), Ind., 509 N.E.2d 812. It must be shown, however, that the defendant was aware of his trial date and time, and it may also be necessary to instruct the jury that the defendant's absence was not evidence of guilt and that he had the right to give up the rights to confront and aid in cross-examination of witnesses. *Bedgood v. State* (1985), Ind., 477 N.E.2d 869, 872. In order to show a defendant's waiver of the constitutional right to be present at his trial, therefore, the record must reflect compliance with certain due process requirements. A waiver of the right to counsel based upon a defendant's conduct has similar due process requirements. In the present case, the court could have satisfied due process by briefly apprising Seniours of the ramifications of his conduct at the commencement of his trial.[1]

■ We note that where a defendant seeks to frustrate the justice system by deliberate delaying tactics, the court has other powers at its disposal other than proceeding with trial. *Fitzgerald,* 257 N.E.2d at 312. Such powers would include use of the contempt power. *Id.; Kimberling v. State* (1990), Ind.App., 556 N.E.2d 1331, 1332.

---

1. We disagree with the dissent's framing of the issue before us as whether the defendant's conduct alone may be determinative of a knowing and voluntary waiver of the right to counsel. Seniours' conduct clearly indicates such waiver, but the question before us is whether the court satisfied its due process obligation of ensuring, on the record, that the waiver was knowing and voluntary. We also disagree that our supreme court has made a distinction, in regard to whether the court need satisfy this obligation, between cases in which a defendant has requested to act as his own attorney and cases where the defen-

dant refuses to retain or accept the services of an attorney. The holding in *Leonard,* which falls into the former category, and the holdings in *Fitzgerald* and *Houston,* which fall into the latter, are essentially the same, i.e., that a knowing and voluntary waiver may be found where the court advises the defendant of the consequences of self-representation. Making such a distinction would serve little purpose; a defendant's due process rights remain the same, as do the dangers of self-representation, regardless of whether the defendant's waiver is active or passive.

In arguing his incapacity to defend himself in the courtroom, Seniours compares himself to "a sheep among the wolves." Appellant's Brief, p. 22. That is an unfortunate metaphor, considering the crime with which Seniours was charged. It clear from the record, however, that Seniours' attempt to defend himself was doomed from the moment he opened his mouth. Seniours' opening statement reads as follows in its entirety:

"Anything I'm going to attempt to prove today is that I wasn't the only one with her that night. There was somebody that was with her before I was and I'm just here to tell my side of the story, that I was provoked or whatever. That I wasn't the whole person to blame on what happened that night. Thank you."

Record, p. 136. Seniours was obviously laboring under the mistaken impression that consent and molestation by others are defenses to child molestation. For the prosecution, the trial thus became like shooting ducks in a barrel. Seniours' ignorance of the law would not trouble us, however, were there evidence in the record to indicate that Seniours waived his constitutional right to counsel knowingly, intelligently, and voluntarily, regardless of whether that waiver was active or passive. The court's failure to make the requisite apprisements to Seniours on the record mandates that we reverse Seniours' conviction and remand to the trial court for a new trial.

REVERSED AND REMANDED.

BARTEAU, J., concurs.

RUCKER, J., dissents with opinion.

RUCKER, Judge, dissenting.

I respectfully dissent from the majority's decision because I believe it is founded on a faulty premise, namely that waiver of the right to counsel cannot be established by the defendant's conduct alone.

The law is well-settled that whenever a defendant proceeds to trial without the benefit of counsel, the record must reflect that the right to counsel was voluntarily, knowingly, and intelligently waived. *Leonard v. State* (1991), Ind., 579 N.E.2d 1294; *Martin v. State* (1992), Ind.App., 588 N.E.2d 1291; *Mitchell v. State* (1981), Ind.App., 417 N.E.2d 364. In addressing the issue of what constitutes a knowing and intelligent waiver, our supreme court appears to have made a distinction between cases in which a defendant has requested to act as his own attorney and cases where no such request has been made, but the defendant's conduct indicates an unwillingness to retain or accept the services of an attorney. Where a defendant requests self-representation, he waives the right to counsel only after he has been advised of the importance of the right to counsel and of the dangers and disadvantages of self-representation. However, no such advisement is necessary where the defendant, by his conduct, has knowingly and intelligently waived the right to counsel.

The first class of cases in which waiver of the right to counsel has been addressed involves an assertion by the defendant of his constitutionally protected right of self-representation. The right to act as one's own attorney, embodied in the Sixth Amendment to the United States Constitution, was first recognized in *Faretta v. California* (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562. In that case, the court acknowledged that the right of an accused to conduct his own defense seems to conflict with decisions holding that no person can be convicted and imprisoned unless he has been accorded the right to assistance of counsel. The court also recognized that when an accused manages his own defense he relinquishes many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, an accused must "knowingly and intelligently" forego those relinquished benefits. *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541. To insure that a defendant in such a case has competently and intelligently chosen self-representation, the defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.*

Following *Faretta*, our courts have required that where a defendant requests to proceed without counsel, he must be fully

advised regarding the dangers and disadvantages of self-representation. *Kindred v. State* (1988), Ind., 524 N.E.2d 279; *Nation v. State* (1983), Ind., 445 N.E.2d 565; *McKeown v. State* (1990), Ind.App., 556 N.E.2d 3, *trans. denied.* Failure to so advise the defendant may constitute reversible error. However, even where the trial court has not made the necessary advisements, waiver may be found if the record demonstrates that the defendant's background, experience, and conduct enable him to competently forego the right to counsel. *See Kindred v. State* (1988), Ind., 521 N.E.2d 320; *Jackson v. State* (1982), Ind.App., 441 N.E.2d 29. Nevertheless, in any case involving a request by the defendant to proceed *pro se,* the trial court must be satisfied that the defendant understands the consequences of his choice before he is allowed to forego the right to counsel.

A different approach is necessary, however, in cases where no request for self-representation has been made but where the defendant nonetheless refuses to retain or accept the services of an attorney. The defendant's actions in this regard serve to disrupt the orderly processes of justice and as such may alone constitute a knowing and intelligent waiver of the right to counsel. *Houston v. State* (1990), Ind., 553 N.E.2d 117. In support of its apparent position that mere conduct of the accused is insufficient to establish waiver of the right to counsel, the majority cites *Fitzgerald v. State* (1970), 254 Ind. 39, 257 N.E.2d 305. In *Fitzgerald,* the defendant failed to secure the services of an attorney despite repeated letters and telephone calls from the trial court urging him to do so. When the defendant appeared on the day of trial without an attorney the court allowed the trial to proceed and the defendant represented himself throughout a portion of the proceedings. On appeal, our supreme court held that although the absence of counsel was attributable entirely to the defendant's own actions, the record did not demonstrate a knowing and intelligent waiver of the right to counsel. The court acknowledged that in some instances waiver of a right may be predicated upon the defendant's conduct with respect to that right. Nevertheless, regarding a constitutional right of fundamental importance such as the

right to counsel, evidence in addition to the defendant's conduct was necessary in order to establish waiver. *Id.*

However, subsequent to *Fitzgerald,* our supreme court has seemingly reversed its view that conduct alone may not amount to waiver of the right to counsel. In *Houston,* 553 N.E.2d at 118, the court found a knowing and intelligent waiver of the right to counsel where the defendant's actions "enabled him to frustrate the judicial process and avoid being brought to trial." *Id.* In that case, the defendant agreed to employ private counsel after his failure to cooperate with three court-appointed attorneys resulted in their withdrawal from the case. The trial court warned the defendant that if he failed to employ counsel, he would be required to represent himself with the use of advisory counsel only. When the defendant appeared for trial without an attorney, the court again offered the services of a court-appointed attorney. The defendant rejected the offer and proceeded to represent himself while the attorney assisted in an advisory capacity. On review, our supreme court concluded "[b]ecause appellant did not retain private counsel, he must have elected to proceed with advisory counsel only." *Id.* From the facts presented, the court "assume[d] that appellant elected to waive his right to counsel and proceed *pro se.*" *Id.* *Houston* thus stands for the proposition that even in the absence of advisements to the defendant regarding the consequences of proceeding without an attorney, a defendant's conduct may establish that he knowingly and voluntarily waived the right to counsel.

The view that conduct alone may constitute waiver of the right to counsel is consistent with a number of cases in which certain actions of the accused amount to waiver of a constitutional right. For example, when defense counsel takes a deposition on behalf of the defendant, any objection based on the right of confrontation is waived if the State subsequently seeks to admit the deposition at trial. *State v. Owings* (1993), Ind., 622 N.E.2d 948; *Abner v. State* (1985), Ind., 479 N.E.2d 1254, 1262; *Gallagher v. State* (1984), Ind.App., 466 N.E.2d 1382. In addition, a defendant's right pursuant to the Sixth

Amendment and Indiana Constitution Article 1, § 13 to be present during his trial is waived where the defendant knew of his trial date yet failed to appear. *Adams v. State* (1987), Ind., 509 N.E.2d 812; *McCaffrey v. State* (1991), Ind.App., 577 N.E.2d 617. Such conduct results in a knowing waiver of the right to be present at trial because the defendant's deliberate absence "indicates nothing less than an intention to obstruct the orderly processes of justice." *Broecker v. State* (1976), 168 Ind.App. 231, 342 N.E.2d 886, 888. Likewise, where the right to counsel is at issue, waiver may result where a defendant disrupts the orderly processes of justice by refusing to employ counsel prior to his trial. *Houston,* 553 N.E.2d at 118.

In the present case, the trial court conducted five separate hearings in an attempt to encourage Seniours to employ counsel, provided the names of several attorneys for Seniours to contact, and ordered the trial continued in order to allow Seniours additional time to hire counsel. At the last of the hearings, the court informed Seniours that the trial would proceed on the scheduled date and that Seniours should secure counsel before that time. Seniours nevertheless appeared on the day of trial without an attorney. Such conduct demonstrates a deliberate attempt to frustrate the orderly processes of the court and is sufficient to demonstrate waiver of the right to counsel.