**Barry S. POYNTER, Jr., Appellant–
Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 57A03–9911–CR–423.**

Court of Appeals of Indiana.

Aug. 11, 2000.

Transfer Granted Oct. 19, 2000.

Susan K. Carpenter, Public Defender of Indiana, Gregory L. Lewis, Deputy Public Defender, Indianapolis, Indiana, Attorneys for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Adam M. Dulik, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BROOK, Judge

### Case Summary[1]

Appellant-defendant Barry S. Poynter ("Poynter") appeals his convictions for battery[2] and resisting law enforcement,[3] both as Class A misdemeanors. We reverse and remand for a new trial.

### Issue

The sole issue presented for review is whether Poynter knowingly, intelligently, and voluntarily waived his right to be represented by counsel.

### Facts and Procedural History

The relevant facts are as follows. Officers from the Kendallville Police Department arrested Poynter on January 1, 1999, during a barroom brawl. During the melee, he bit the arresting officer's thumb. On January 5, 1999, the State charged Poynter with battery on a police officer and resisting law enforcement. At his initial hearing that same day, Poynter stated he intended to hire an attorney. He also signed a form provided to him by the trial court entitled, "RIGHTS AT INITIAL HEARING," which advised him in part as follows:

> You have certain legal rights in your case, which include:
>
> 1. The right to be represented by and to consult with a lawyer.
>
> 2. The right to have the court appoint an attorney to represent you at no cost if found to be indigent.

At his first pre-trial conference on February 22, 1999, Poynter reiterated his intent to retain counsel. This hearing was not transcribed, but a pre-trial summary sheet for that hearing reads, "PTC continued until 4–19–99 so that [defendant] can obtain an attorney." Poynter's signature appears on this sheet. However, at the final pre-trial conference on April 19, 1999, when asked by the court whether he planned to hire an attorney to represent him, Poynter replied, "Well I was, but I've been working like seven (7) days a week, last week twelve (12) hours a day, and I've been really tired, and I ain't been getting up on time and walking down there to talk to them . . . .." In setting the cause for a bench trial to take place June 21, 1999, the trial court twice advised Poynter that regardless of whether he retained an attorney, he needed to "be prepared for a trial" on that date. At the bench trial, however, Poynter appeared without counsel. The trial transcript contains neither a colloquy regarding Poynter's lack of representation nor any request for a continuance to give him another opportunity to retain counsel. At the conclusion of the trial, the trial court found Poynter guilty as charged, sentenced him to serve consecutive 180–day sentences in the Noble County Jail,

---

1. Oral argument was heard in this cause on June 28, 2000, in Indianapolis. We commend both parties for their excellent written and oral presentations.

2. Ind.Code § 35–42–2–1(a)(1)(B) (Battery a Class A misdemeanor when committed against a law enforcement officer).

3. Ind.Code § 35–44–3–3.

fined him $100 for each count, and assessed $125 in court costs.

## Discussion and Decision

■ The United States and Indiana Constitutions guarantee criminal defendants the right to representation by counsel. *See* U.S. CONST. AMEND. VI, XIV; IND. CONST. art. I, § 13. When a criminal defendant waives this right to counsel and proceeds *pro se,* the record must reflect that the waiver was knowing, intelligent, and voluntary. *Greer v. State,* 690 N.E.2d 1214, 1216 (Ind.Ct.App.1998), *trans. denied.* Upon review, we base our determination of whether a defendant knowingly, intelligently, and voluntarily waived the right to counsel on the facts of the individual situation. *Logan v. State,* 693 N.E.2d 1331, 1332–33 (Ind.Ct.App.1998), *trans. denied.*

Citing *Seniours v. State,* 634 N.E.2d 803, 807 (Ind.Ct.App.1994), Poynter argues that the trial court failed to advise him of the pitfalls of self-representation, and that the absence of such a warning precludes a knowing, intelligent, and voluntary waiver of the right to counsel. The State counters by relying primarily on *Brickert v. State,* 673 N.E.2d 493 (Ind.Ct.App.1997), for the proposition that a defendant's conduct may suffice to establish waiver of the right to counsel.

■ We acknowledge that a defendant's conduct may suffice to establish his waiver of the right to counsel. *Houston v. State,* 553 N.E.2d 117, 118 (Ind.1990); *see also Brickert,* 673 N.E.2d at 496. However, various panels of this court have interpreted *Houston* with differing outcomes. In *Houston,* the defendant rejected three successive court-appointed attorneys. At a final pre-trial hearing two months before trial, the trial court noted that the case had been pending for almost two years and warned the defendant that if he failed to retain his own counsel, he would proceed with advisory counsel only. Noting that the defendant's "repeated refusal to cooperate with counsel and failure to retain private counsel enabled him to frustrate the judicial process and avoid being brought to trial," our supreme court concluded that

> [Houston] was adequately warned by the trial court that if he chose not to employ private counsel, he would represent himself and would be given advisory counsel. Because [Houston] did not retain private counsel, he must have elected to proceed with advisory counsel only.

*Houston,* 553 N.E.2d at 118.

In *Seniours,* a divided panel of this court held that *"Houston* demands, at the very least, that the record reflect that the court has presented to the defendant the choices available to him with some minimal explanation of their meaning." 634 N.E.2d at 806. The facts of *Seniours* showed that the trial court "bent over backwards to accommodate Seniours and to comply with the requirements of due process" by continuing trial five times, repeatedly urging him "in no uncertain terms to secure an attorney," and providing him with names of attorneys to contact. *Id.* at 805. Despite noting that the record was "replete . . . with examples of conduct on Seniours' part that may appropriately be described as 'passive resistance,'" and that he had "clearly frustrated and delayed the process of justice for several months," this court held that there was, nonetheless, "nothing in the record to show that Seniours voluntarily, knowingly and intelligently chose to represent himself." *Id.* "During the course of the status hearings, the possibility that trial would proceed whether or not Seniours employed counsel is mentioned twice, but in terms that do not suggest the consequences of a decision to proceed *pro se." Id.*

The *Brickert* majority, on the other hand, excused the trial court's failure to issue a warning of the pitfalls of self-representation, where

> at all relevant times, Brickert asserted his right to employ private counsel and represented (misrepresented) to the tri-

al court that he would obtain the services of a certain private counsel. In this context, an advisement of the dangers of self-representation would be superfluous. On the day of trial, when Brickert was required to defend himself *pro se,* such an advisement would again have been superfluous because, at that point, it was too late to obtain counsel. Similarly, we cannot fault the trial court for not creating a record that it had specifically warned Brickert that he would be required to proceed *pro se* if he did not obtain private counsel. Without question, that consequence was obvious under the circumstances. Brickert was given notice of every trial date scheduled in this matter, and continuously represented that he would hire an attorney to represent him at the trial. It was obvious that, if Brickert were to have a private attorney represent him at the scheduled trial, he would have to hire one. . . .

Actions often speak louder than words, and the record before us is not silent on the issue of whether Brickert knowingly, intelligently, and voluntarily waived his right to counsel. Brickert unequivocally waived his right to counsel by his conduct, which as discussed above, can only be interpreted as an attempt to frustrate the judicial process and avoid being brought to trial. *See Houston,* 553 N.E.2d at 118. Therefore, we cannot conclude that the trial court abused discretion in denying Brickert's motion for another continuance, and we find no error.

673 N.E.2d at 496.

The State argues that the facts of the instant case comport entirely with those in *Brickert.* We disagree. In *Brickert,* the defendant affirmed to the trial court that he had hired a certain attorney who would be entering an appearance. Five and one-half months later, the State advised the court that no attorney had actually filed an appearance, and requested a pre-trial conference "to determine if defendant intends to have counsel represent him . . . [and to] avoid any unnecessary inconvenience to the State's witness should defendant be unprepared to go to trial without an attorney." 673 N.E.2d at 494. At that conference, Brickert obtained another continuance in order to hire counsel. Six months later, Brickert appeared on the day of trial without counsel and requested another continuance, which the trial court denied.

Here, only five and one-half months elapsed between Poynter's initial hearing and his bench trial. Although Poynter apparently indicated his intent to hire an attorney at his first pre-trial conference, the record does not reflect that the trial court urged him to do so or advised him of the possible consequences if he did not. Two months later, at his final pre-trial conference, Poynter explained that he still intended to retain counsel and that he had saved some money to do so, but that he had been working long hours, was tired, and had not yet taken the time to meet with an attorney. Moreover, unlike Brickert, he did not have a particular attorney in mind. The following exchange occurred:

> POYNTER: I got some money saved up though for a lawyer, but I ain't got, went down there and talked to one.
> COURT: Well, I will set these cases for bench trial and fact finding hearing on June 21st at 10:45. If you decide that you want to get up to go down and hire an attorney –
> POYNTER: I got to sometime.
> COURT: (continuing) You can do that. Otherwise you need to be here June 21st at 10:45, prepared for a trial in these cases. . . . .
> POYNTER: Okay.
> COURT: So either with or without an attorney you need to be prepared for a trial on this date.

The *Brickert* court found that in the "context" of the defendant's representation that he would be retaining counsel, as well as his "attempt to frustrate the

judicial process and avoid being brought to trial," an advisement by the trial court of the dangers of self-representation would be "superfluous." 673 N.E.2d at 496. In Poynter's case, however, the trial court stated that he needed to be prepared to proceed "either with or without an attorney": in other words, the trial court acknowledged the possibility that Poynter might not retain counsel.

When a defendant has chosen to waive his right to counsel, it is the trial court's duty to determine if the waiver was knowing and voluntary. *The trial court must establish a record* showing that the defendant was aware of the nature, extent and importance of the right and the consequences of waiving it. Merely informing the defendant of his constitutional rights is insufficient.

*Sedberry v. State*, 610 N.E.2d 284, 286 (Ind.Ct.App.1993) (emphasis added); *see also Raber v. State*, 626 N.E.2d 506, 509 (Ind.Ct.App.1993) (citing *Sedberry* and *Leonard v. State*, 579 N.E.2d 1294 (Ind. 1991), and reiterating that "we look to the facts in the record to determine whether the trial court apprised the defendant of the advantages of representation by counsel and the pitfalls which the defendant might experience if he proceeds *pro se.*"). In addition to raising the possibility at the final pre-trial hearing that he might not retain counsel by the scheduled trial date, Poynter appeared for his bench trial without representation, as had Brickert. However, whereas Brickert's conduct could "only be interpreted as an attempt to frustrate the judicial process and avoid being brought to trial," Poynter's conduct was not as egregious. Furthermore, the trial transcript is devoid of *any* acknowledgement of his appearance without counsel, much less an admonishment as to the possible pitfalls or consequences of proceeding without counsel. Thus, unlike the trial court in *Brickert*, for whom such an admonishment would have been "superfluous," the trial court here missed at least one opportunity to make the requisite record to establish that Poynter's waiver was

knowing, intelligent and voluntary. "Whenever a defendant proceeds *pro se*, it is incumbent upon the trial court to determine if the waiver of the right to counsel is made knowingly and voluntarily." *Kirkham v. State*, 509 N.E.2d 890, 892 (Ind.Ct. App.1987).

The defendant should know of the nature of the charges against him, the possibility that there may be lesser included offenses within these charges, and the possibility of defenses and mitigating circumstances surrounding the charges. The defendant should be aware that self-representation is almost always unwise, that the defendant may conduct a defense which is to his own detriment, that the defendant will receive no special indulgence from the court and will have to abide by the same standards as an attorney as to the law and procedure, and that the State will be represented by experienced professional legal counsel.

*Dowell v. State*, 557 N.E.2d 1063, 1066–67 (Ind.Ct.App.1990).

■ The *Dowell* court also held that defendants should be specifically instructed as to the following legal skills and expertise that an attorney would afford them through representation:

(1) investigating and interrogating witnesses; (2) gathering appropriate documentary evidence; (3) obtaining favorable defense witnesses; (4) preparing and filing pre-trial motions; (5) preparing appropriate written instructions of the jury; (6) presenting favorable opening and closing statements; (7) examining and cross-examining witnesses at trial; and (8) recognizing objectionable, prejudicial evidence and testimony and making proper objections thereto.

*Id.* at 1067. As we noted recently in *Callahan v. State*, "[o]ur supreme court has approved of [the *Dowell*] guidelines, but has held that such guidelines do not 'constitute a rigid mandate setting forth specific inquiries that a trial court is required to

make before determining whether a defendant's waiver of right to counsel is knowing, intelligent, and voluntary.'" 719 N.E.2d 430, 440 (Ind.Ct.App.1999) (quoting *Leonard,* 579 N.E.2d at 1296). "It is sufficient for the trial court to apprise the defendant of the advantages of representation by counsel and the pitfalls of self-representation." *Callahan,* 719 N.E.2d at 440. However, the trial court in *Callahan,* unlike in Poynter's case, had "conducted an extensive inquiry into Callahan's reasons for wishing to proceed pro se and his readiness to do so." *Id.* Callahan had also undergone one trial while represented by counsel (as the trial court had initially denied his request to proceed pro se as untimely) and had subsequently "repeatedly asserted that he wished to proceed pro se." The trial court asked Callahan if he had ever tried a case before, and he responded that he had, at which point the trial court allowed Callahan's appointed counsel to withdraw, and in spite of Callahan's objections, "insured ... that counsel was available" to Callahan "at all stages of the proceedings."

Similarly, in *Frederick v. State,* 658 N.E.2d 941 (Ind.Ct.App.1995), we held that under the circumstances the defendant had knowingly, intelligently and voluntarily waived his right to counsel where he had "demonstrated his familiarity with the legal system" by negotiating more favorable probationary terms, conducting cross-examination, and "point[ing] to flaws in the State's case" during his closing argument. *Id.* at 943.

In contrast to *Callahan* and *Frederick,* the record before us reflects that at the commencement of Poynter's bench trial, he was not entirely aware of the scope and nature of the proceedings:

COURT: This matter, first matter is set for trial today and the second is set for fact finding hearing or, I guess, probation violation hearing. [Addressing Deputy Prosecutor]: Mr. Newman, do you have any opening statement to make?

MR. NEWMAN: State waives opening statement, Your Honor.

COURT: Do you have any opening statement you wish to make? It's not considered evidence in the case.

POYNTER: No, Sir. I don't have no. I, I, I up, *I don't know if this is for the same thing, but I got a warrant for my arrest, right?*

COURT: Yeah (affirmative), they just gave me that file. I've not even had time to look at it.

POYNTER: I went to the bank to try to get my check cashed and the wind caught the door and they called the police on me and I guess they filed a charge on me and I didn't get to it in time because I've been moving.

COURT: Okay, that's [cause number] 9904–CM–360. We'll get into that after we get done with the trial.

POYNTER: Okay.

MR. NEWMAN: I assume we are trying these separately?

COURT: Yes. Call your first witness, please.

(R. at 54–55, emphasis added). Not only did Poynter apparently fail to understand that two separate causes had been consolidated and were to be discussed at the same hearing, but the deputy prosecutor also appeared to be confused on this point.

Moreover, the record reflects that we cannot impute to Poynter knowledge of any of the eight legal skills enumerated in *Dowell.* First, he clearly did not understand the nature of cross-examination. When asked whether he had any questions of State's witness Glen Hurst, a Kendallville patrolman who had assisted in the arrest, Poynter responded as follows:

POYNTER: It's not a quest –, is it a question if I ask him if he noticed that I had four (4) stitches in my right hand?

COURT: That's a question, yeah. Something he could respond to.

POYNTER: Did you notice that?

HURST: No I didn't.

POYNTER: Cause I had four (4) stitches in my right hand and I worked at the foundry and ah, and it was hard to make it.

COURT: Okay. Do you have any –. You're going beyond a question right now. Do you have any other questions?

POYNTER: No, Sir.

Nor did Poynter understand the concepts of investigating, interrogating, and obtaining favorable defense witnesses. When the State rested, the following colloquy occurred:

COURT: Mr. Poynter, if you wish to you can present witnesses or evidence and if you wish to you can testify yourself.

POYNTER: I had a witness but she works at the bar and she's tired and I don't really want to wake her up and be a nuisance to her.

The court then advised Poynter he could testify on his own behalf, which he briefly did. At the conclusion of his testimony, the court asked whether he had any other witnesses or evidence to present, to which Poynter replied, "Well, no I don't. · They, they, *they probably, they wouldn't have · came today.* Thank you, Sir." (Emphasis added.)

In *Fitzgerald v. State,* our supreme court held that notwithstanding that the absence of counsel for the defendant was "directly attributable to the defendant's own conduct," "a silent record is not enough." to indicate waiver of a fundamental constitutional right. 254 Ind. 39, 47,

257 N.E.2d 305, 311 (1970). The *Fitzgerald* court noted that "ordinarily courts are unwilling to reward a litigant for his own misconduct," but that the right to counsel is "no ordinary right but rather ... a constitutional right of fundamental importance." 254 Ind. at 46, 257 N.E.2d at 311.

> Constitutional rights have occupied a sacred position in our legal system and rightfully so. The concepts, principles, and rights embodied in both the United States and Indiana Constitutions command the most sensitive protection the courts can provide. In fact, protection of all constitutional rights is our most solemn duty.

254 Ind. at 46–47, 257 N.E.2d at 311.

The trial court's failure to engage in some form of *Dowell* advisement of the benefits of counsel and the pitfalls of self-representation contradicts the gravity of the right of which Poynter was deprived. The right to counsel is the most "pervasive" of all the Sixth Amendment rights, in that, as the facts of this case demonstrate, without counsel a defendant may not be aware of his right to investigate and subpoena favorable witnesses, much less avail himself of the other legal skills enumerated in *Dowell.* While we acknowledge that a defendant *may* comprehend the intricacies of the criminal justice system, understand at least the basics of trial procedure, or possess the capability to gather documentary evidence to support his case, Poynter clearly did not. The Sixth Amendment demands more from our courts; a *Dowell* advisement would not have required more than two or three minutes of the trial court's time.[4] Given

---

4. A trial court may want to obtain a written waiver of the right to counsel by means of a signed statement. The form of such a written waiver might read as follows:

WAIVER OF RIGHT TO ATTORNEY AND ACKNOWLEDGEMENT OF DANGERS OF SELF–REPRESENTATION

I have been accused of a crime and have a copy of the charges. The Judge has told me the nature of the charges, and that there may be lesser included offenses, defenses, or mitigating circumstances about which I should know.

I know I have the right to a lawyer and the right to be my own lawyer. The Judge has warned me that it is dangerous and almost always unwise to be my own lawyer, because I will be held to the same standards of law and procedure as a lawyer and will not get any special treatment from the court. The Judge has warned me that I may hurt my own case, and that the State has an experienced lawyer.

the trial court's failure to apprise Poynter of the benefits of counsel and the pitfalls of self-representation, we conclude that it did not establish that his waiver of the right to counsel was knowingly, intelligently, and voluntarily made. We further conclude that he did not waive his right to counsel by his conduct. Therefore, we reverse Poynter's convictions and remand for a new trial.

Reversed and remanded.

DARDEN, J. concurs.

MATTINGLY, J. dissents with opinion.

MATTINGLY, Judge, dissenting.

I respectfully dissent. This case is more appropriately decided under the analysis we applied in *Brickert* and *Frederick*, and I would accordingly affirm Poynter's conviction.

Poynter was advised at his initial hearing on January 5, 1999, of his right to counsel. He signed a form indicating he had been advised of this right and indicated his intent to hire an attorney. At the first pre-trial conference on February 22, 1999, Poynter reiterated his intent to retain counsel and his pre-trial conference was continued some two months to permit him to do so. At the final pre-trial conference on April 19, 1999, Poynter was asked by the trial court whether he planned to hire an attorney to represent him. Poynter replied that he did intend to hire an attorney, but he had been too busy working "and I've been really tired, and I ain't been getting up on time and walking down there to talk to them." The trial court

The judge has warned me that a lawyer has skills and expertise in preparing for an conducting a criminal defense that I do not have, and that a lawyer will be better able to:
- investigate and question witnesses,
- gather appropriate documentary evidence,
- obtain favorable defense witnesses,
- prepare and file pre-trial motions,
- prepare appropriate written jury instructions,
- present favorable opening and closing statements,

told Poynter twice that regardless whether he hired an attorney, Poynter needed to be prepared for a trial on the day of trial, June 21, 1999. Poynter appeared for trial but still had not obtained counsel.

Poynter was advised of his right to counsel and he had multiple opportunities to obtain counsel. As did the defendant in *Brickert*, Poynter acknowledged that he wished to retain private counsel and would be hiring an attorney:

At all relevant times, Brickert asserted his right to employ private counsel and represented (misrepresented) to the trial court that he would obtain the services of a private attorney. In this context, an advisement of the dangers of self-representation would be superfluous.

*Brickert*, 673 N.E.2d at 496.

The majority correctly notes that the record could have been more clear with respect to the trial court's advisements to Poynter concerning all of the dangers of self-representation. Still, it is apparent that Poynter was sufficiently aware of those dangers.

I find Poynter's attitude toward his misdemeanor trial cavalier, as he placed his priorities on working and being too tired to try to find representation for his trial. He was told several times of his right to counsel and acknowledged that he understood that right. In this situation, the following passage from *Frederick* is enlightening:

Essentially, Frederick is arguing that a defendant can choose to hold hostage

- examine and cross-examine witnesses at trial, and
- recognize objectionable, prejudicial evidence and testimony and make proper objections to it.
IN SPITE OF THE WARNINGS I HAVE BEEN GIVEN, I DO NOT WANT TO HIRE A LAWYER OR HAVE ONE APPOINTED FOR ME. I DO NOT WANT STAND–BY COUNSEL. I WANT TO REPRESENT MYSELF.

_____    _____
Date                    Signature of Defendant

the court's public defender eligibility determinations and trial calendar. Under Frederick's analysis, a defendant who is ineligible for a public defender and who does not hire counsel can indefinitely avoid trial. Such is not the case.

658 N.E.2d at 944.

The trial court did not err when it declined to allow Poynter to hold hostage the court's calendar and to attempt to indefinitely avoid trial. I would affirm Poynter's conviction.