**Stephen L. GILMORE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 40A01–1011–CR–553.**

Court of Appeals of Indiana.

Aug. 24, 2011.

---

R. Patrick Magrath, Madison, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

KIRSCH, Judge.

Stephen L. Gilmore ("Gilmore") brings this interlocutory appeal from the trial court's order finding that Gilmore was no longer indigent and that he had waived or forfeited his right to appointed counsel by his obstreperous conduct. Gilmore presents the following restated issues for our review:

I. Whether the trial court abused its discretion by finding that Gilmore was no longer indigent; and

II. Whether a defendant can waive or forfeit his right to counsel by conduct.

We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

In February 2005, the State charged Gilmore with the murder of Bill Akers. The trial court found Gilmore to be indigent and appointed two experienced attorneys, Alan Marshall and Bradley Kage, to represent him. During the course of their representation of him, Gilmore filed pro se motions and a "Grievance for the Record" in which Gilmore expressed his displeasure with the case, the police, the prosecutor, and his own attorneys. *Appellant's App.* at 43–45. In Gilmore's first trial, the jury was unable to reach a unanimous verdict, and the trial court declared a mistrial. Thereafter, Gilmore was able to and did post a cash bond.

On October 28, 2005, the trial court reset the matter for a jury trial to commence on June 12, 2006. On April 5, 2006, Marshall and Kage filed a motion to withdraw from their representation of Gilmore, citing major disagreements in trial strategy creating a breakdown of the attorney-client relationship. The trial court granted their motion after a hearing on the matter.

Because the trial court had exhausted the local pool of public defenders qualified to represent Gilmore against the murder charge, and who could do so without a conflict of interest, the trial court appointed an attorney from Jefferson County, Mark Wynn, to represent Gilmore. Wynn requested that the trial court appoint attorney Jeff Flores, also of Jefferson County, to serve as co-counsel. The trial court granted that request. Wynn and Flores each filed motions to withdraw from representation, one citing a breakdown in communication, and the other citing a deterioration of the attorney-client relationship beyond repair. The motions stated that Gilmore had requested the appointment of other counsel to represent him. The trial court granted both motions and appointed attorney Mary Stotts to represent him. The trial court found that Gilmore was partially indigent and ordered him to pay for all defense-related costs except for the cost of an attorney.

On January 21, 2009, the trial court *sua sponte* set a hearing to review Gilmore's indigency status. The trial court found no change in Gilmore's status and continued Stotts' appointment as counsel for Gilmore. A special prosecutor was also appointed after Marshall became the Jennings County Prosecutor.

On July 28, 2010, Stotts filed a motion to withdraw from representation based on a breakdown in the attorney-client relationship and the lack of meaningful communication between Gilmore and counsel. The trial court granted the motion and held a hearing on Gilmore's indigency status on August 26, 2010. Gilmore provided information about his financial status and reiterated his desire to be represented by court-appointed counsel. On September 1, 2010, the trial court issued an order finding that Gilmore was not indigent and that he had waived his right to counsel by his obstreperous conduct. The trial court then appointed appellate counsel for the limited purpose of perfecting an interlocutory appeal of that order. We reproduce here, the trial court's findings from its September 1, 2010 order.

1.) Stephen Gilmore is fifty-eight (58) years of age. He is unmarried and lives alone in rural Jennings County.

2.) Mr. Gilmore has demonstrated throughout this case he is an intelligent, articulate individual clearly capable of

understanding the judicial process. In fact, through his pleadings, correspondence and blog, he has demonstrated his understanding is well above average.

3.) Mr. Gilmore's total income is derived from Social Security in the sum of One Thousand Twenty-five Dollars and Twenty-five Cents ($1,025.25) per month after Medicare deduction.[1] He also owns a mobile home on real estate with no debt in Jennings County valued at Fifty-four Thousand Two Hundred Dollars ($54,200.00) by the Assessor of Jennings County as of March 1, 2010. He has two (2) older vehicles.

4.) Mr. Gilmore has had five (5) court appointed attorneys, all of whom have withdrawn from representing him for basically the same reason. Copies of each of their Motions To Withdraw are attached hereto as Exhibits 1–4.

5.) His first two (2) attorneys, who represented him through the first trial, were two (2) of the most experienced this Court had, each with vast experience as public defenders, Prosecutor or Deputy Prosecutor and private practitioners running their own practices, with forty-four (44) years of combined experience.

6.) Having exhausted the local pool of public defenders without a conflict of interest, or its remaining public defenders lacking the experience to defend a charge of murder, this Court looked to Jefferson County where it again selected attorneys, not only with the experience to represent Mr. Gilmore, but also the temperament.[2]

7.) Indigency, for the purpose of qualifying for a taxpayer funded defense, involves an inquiry into income, expenses, resources and assets. Also to be considered is the type of case and the consequence to a Defendant, if convicted. However, a Court must also consider a Defendant's conduct and behavior when re-evaluating indigency. Although a Defendant has a right to competent, effective counsel, if indigent, he does not have the right to abuse it, in this case at the expense of the County. His first two (2) attorneys were paid a combined total of Twenty-one Thousand Dollars ($21,000.00). A Defendant certainly cannot derail his own prosecution because he is so obstreperous and difficult that no one can represent him, thus effectively preventing a trial.

8.) This Court is aware that Defendant is charged with murder, and if convicted, the consequences to him grave. It is aware of the holding in *Fitzgerald v. State* [254 Ind. 39], 257 N.E.2d 305 (Ind. 1970), including the dissent. Here, however, to allow Mr. Gilmore to continue on the path he has chosen is to allow him to derail his own prosecution, which this Court nor any Court can tolerate if the integrity of the judicial system is to be upheld. The State or Federal Constitutions nowhere guarantee a Defendant the right to counsel at the expense of justice.

9.) Mr. Gilmore is no longer entitled to taxpayer-funded court appointed counsel because he is not indigent. He can se-

---

1. According to the Federal Poverty Guidelines, a single person household with income below $10,830.00 per year is considered poverty.

2. With the exception of Mr. Flores, Mr. Gilmore has filed, each one later dismissed as meritless, disciplinary complaints with the Indiana Supreme Court, against every attorney who has represented him, and former Prosecuting Attorney, Gary L. Smith, Chief Deputy Prosecuting Attorney, Drew Dickerson, and two (2) complaints against this Judge.

cure his own counsel. His actions have demonstrated a waiver of counsel.

1[0].) Having just decided that, this Court is next left with the dilemma of trying Mr. Gilmore, presumably now representing himself, for murder, and the financial consequence to the County, that if convicted there would surely be an appeal. Therefore, the Court now appoints Patrick Magrath to represent Mr. Gilmore, only to explore a possible interlocutory appeal on this ruling. Mr. Magrath is *not* appointed to represent Defendant at trial.

1[1].) This ruling raises a unique and novel question of Constitutional significance as to whether there are limits on one's right to indigent counsel, which has not been clearly addressed under the unique facts of this case nor since *Fitzgerald*, decided in 1970. Further, resolution of this issue now will provide this Court, the Defendant, and other Judges faced with this dilemma, guidance on this issue.

*Appellant's App.* at 68–69. Gilmore now appeals.

## DISCUSSION AND DECISION

### I. Indigency Determination

 Gilmore contends that the trial court abused its discretion by reversing its previous determination of his indigency as there had been no substantial change in his financial status since he was charged with murder. The trial court has the discretion to determine whether counsel shall be appointed at public expense. *Johnson v. State*, 640 N.E.2d 747, 749 (Ind.Ct.App. 1994). However, the trial court does not have the discretion to deny counsel to an indigent defendant. *Graves v. State*, 503 N.E.2d 1258, 1262 (Ind.Ct.App.1987).

 To set specific monetary guidelines for the trial court's indigency deter-

mination would be impossible. *Moore v. State*, 273 Ind. 3, 401 N.E.2d 676, 678 (1980). Nonetheless, we have held that a defendant need not be totally without means in order to be entitled to court-appointed counsel. *Johnson*, 640 N.E.2d at 749. If the defendant lacks the financial resources to hire an attorney without imposing substantial hardship on himself or his family, the trial court must appoint counsel to defend him. *Moore*, 401 N.E.2d at 679. The trial court's indigency determination must be based on a thorough examination of the particular defendant's total financial picture, and not on a superficial examination of factors such as the ownership of property or income. *Id.* The record must show that the determination included a balancing of assets against liabilities and a consideration of the amount of a defendant's disposable income or resources available after the payment of his fixed or certain obligations. *Id.*

Further, Indiana Code section 33–40–3–7 provides that if a defendant does receive the assistance of a court-appointed attorney, the trial court shall consider the following factors in determining whether the defendant is able to pay the costs of representation:

(1) the person's independently held assets and assets available to the spouse of the person or the person's parent if the person is unemancipated;

(2) the person's income;

(3) the person's liabilities; and

(4) the extent of the burden that payment of costs assessed under section 6 of this chapter would impose on the person and the dependents of the person.

 At the August 26, 2010 hearing, during which the issue of Gilmore's indigent status was revisited, Gilmore stated under oath that he was fifty-eight years

old, lived alone, and that his thirty-six-year-old daughter did not depend on him for support. He acknowledged receiving roughly $ 1,000 per month in social security income benefits, having a ten-year-old mobile home sitting on property to which he has free and clear title, and owning a 1980 Blazer that was inoperable and a 1990 Chevy Lumina van that he inherited from his mother..

In the trial court's September 1, 2010 order, the trial court noted that the Jennings County Assessor valued Gilmore's property at $54,000.00 as of March 1, 2010 and that his income from Social Security was in excess of Federal Poverty Guidelines. *Appellant's App.* at 68. Standing alone, this finding may be sufficient upon which to base a determination that Gilmore was not indigent and, hence, did not qualify for court-appointed counsel. The trial court was familiar with attorney fees in criminal cases in Jennings County and specifically noted that the cost of the two experienced attorneys who represented Gilmore in his first trial was Twenty-one Thousand Dollars ($21,000.00), significantly less than the value of Gilmore's property.

■ The trial court's finding, however does not stand alone. The court also stated, without citing any authority, that "a Court must also consider a Defendant's conduct and behavior when re-evaluating indigency." *Id.* We find this statement troubling because it indicates that the trial court based its indigency determination in whole or in part on its assessment of Gilmore's conduct, not his financial condition. We have found no such requirement with regard to an indigency status determination.

The State argues that Gilmore has provided us with an incomplete record upon which to make a determination whether the trial court abused its discretion in finding Gilmore no longer indigent. The State claims that in order for this court to examine the trial court's determination for an abuse of discretion, Gilmore should have provided the transcripts from the initial hearing, and the 2009 indigency review hearing. The State contends that we cannot know the full extent of the trial court's inquiry into the matter, or what information had changed without those transcripts. Although transcripts of the prior hearings would have supplied the complete background, we nonetheless find the record sufficient to allow us to make our decision.

The only change evident from the findings and conclusions is the trial court's understandable irritation with Gilmore for his apparent attempts to frustrate the judicial system. Gilmore has been able to delay his retrial on the murder charges by insisting that his court-appointed counsel adhere to his defense theories, ultimately leading to a breakdown in the lawyer-client relationship on numerous occasions. The question, however, is Gilmore's financial condition, not his behavior. The trial court found that Gilmore was indigent and entitled to appointed counsel. Thereafter, there was no substantial change in his financial status. Having found that Gilmore's assets and income were insufficient for him to afford to hire his own counsel, the court cannot reverse its decision without finding a change in circumstances since its earlier decision or determining that its prior decision was in error. Here, the trial court did neither. Accordingly, we conclude that the trial court abused its discretion by finding that Gilmore was not indigent when he lacks the financial resources to hire an attorney without imposing substantial hardship on himself. The trial court retains the ability to order Gilmore to reimburse the costs of his defense to the extent he is able to do so.

## II. Forfeiture or Waiver of Right to Counsel

Having found that Gilmore is indigent, and therefore, entitled to court-appointed counsel, we turn to the issue of whether Gilmore waived or forfeited that right by his conduct. Gilmore contends that the trial court erred by finding that he had waived his right to counsel by conduct. The trial court found that Gilmore had derailed his own prosecution because he was so obstreperous and difficult that no one could represent him. *Appellant's App.* at 68. The trial court concluded that Gilmore had waived his right to counsel by his conduct. ("Although a Defendant has a right to competent, effective counsel, if indigent, he does not have the right to abuse it, in this case at the expense of the County.") *Id.* at 69. The trial court reached this conclusion even though Gilmore consistently requested to be represented by counsel.

 The right to be represented by counsel is protected by both the Federal and Indiana Constitutions. U.S. Const. amend. VI; Ind. Const. art. I, § 13. The right to counsel can be waived by a knowing, voluntary, and intelligent waiver. *Jones v. State,* 783 N.E.2d 1132, 1138 (Ind. 2003). Waiver of assistance of counsel may be established based upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. *Jackson v. State,* 441 N.E.2d 29, 32 (Ind.Ct.App. 1982).

In *United States v. Goldberg,* 67 F.3d 1092, 1099 (3rd Cir.1995), the court examined the concepts of waiver, forfeiture, and waiver by conduct, noting that while the terms have very distinct meanings, they have often been used interchangeably. The court went on to state the following about these concepts:

A waiver is an intentional and voluntary relinquishment of a known right. The most commonly understood method of "waiving" a constitutional right is by an affirmative, verbal request. Typical of such waivers under the Sixth Amendment are the requests to proceed *pro se* and requests to plead guilty.... The High Court has emphasized the importance of an affirmative, on-the-record waiver, noting that it indulges every reasonable presumption against waiver of fundamental constitutional rights.

\* \* \*

At the other end of the spectrum is the concept of forfeiture. Unlike waiver, which requires a knowing and intentional relinquishment of a known right, forfeiture results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right.... In *United States v. McLeod,* 53 F.3d 322 (11th Cir.1995), ... the Eleventh Circuit concluded that a defendant who is abusive toward his attorney may forfeit his right to counsel.

\* \* \*

Finally, there is a hybrid situation ("waiver by conduct") that combines elements of waiver and forfeiture. Once a defendant has been warned that he will lose his attorney if he engages in dilatory tactics, any misconduct thereafter may be treated as an implied request to proceed *pro se* and thus, as a waiver of the right to counsel.... Thus, instead of "waiver by conduct," this situation more appropriately might be termed "forfeiture with knowledge."

\* \* \*

[F]orfeiture would appear to require extremely dilatory conduct. On the other hand, a "waiver by conduct" could be based on conduct less severe than that

sufficient to warrant a forfeiture. This makes sense since a "waiver by conduct" requires that a defendant be warned about the consequences of his conduct, including the risks of proceeding *pro se*.... [A] true forfeiture can result regardless of whether the defendant has been advised of the risks of proceeding *pro se*....

67 F.3d at 1099–1101.

In *United States v. Irorere,* 228 F.3d 816 (7th Cir.2000), the defendant was found to have "waived" his right to counsel where four lawyers had been appointed to represent the defendant, each withdrawing because the defendant had fired or failed to cooperate with them, and the defendant had been advised pursuant to *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (criminal defendant should be made aware of dangers and disadvantages of self-representation). Similarly in *United States v. Hoskins,* 243 F.3d 407 (7th Cir.2001), a defendant expressed his desire to discharge his court-appointed attorney prior to the sentencing hearing. The district court explained that if he discharged his attorney, the court would not appoint another attorney and he would have to proceed *pro se,* and advised of the disadvantages and dangers of self-representation. The defendant chose to discharge his attorney and proceed *pro se,* later claiming that he had not waived the right to counsel and, even if he did, the waiver was not done knowingly and intelligently. The Seventh Circuit Court of Appeals held that the defendant had knowingly and intelligently "waived" his right to counsel. 243 F.3d at 411. Although these cases find a "waiver" of the right to counsel, under the analysis of *Goldberg,* they appear to fall into the "waiver by conduct" or "forfeiture with knowledge" category.

In *Fitzgerald v. State,* 254 Ind. 39, 257 N.E.2d 305 (1970), the defendant's counsel moved to withdraw from the case citing the defendant's failure to cooperate in his defense as the reason. The trial court granted the motion and ordered the defendant to appear prior to trial in order to make final arrangements for the trial. The defendant, who was not indigent, appeared, without counsel, and was advised of the trial date. On the date of the trial, the defendant again appeared without counsel and informed the trial court that he had contacted several attorneys, but could not get any of them to agree to represent him. The trial court made a record of its unsuccessful attempts to contact the defendant by telephone and by mail to inquire about his attempts at securing legal counsel. The trial court asked the defendant if he wished to defend himself, and the defendant stated that he did not "believe I am legally inclined to represent myself." 257 N.E.2d at 310. The trial court then advised the defendant of the cost of bringing a jury in for the defendant's trial, and the trial commenced. The defendant cross-examined the State's seven witnesses, and during the testimony of the seventh witness, an attorney appeared for the defendant and proceeded to represent the defendant for the remainder of the trial. The defendant was convicted of the charges and appealed from the trial court's denial of his motion for a new trial in which he challenged the trial court's decision to proceed with the trial even though the defendant was not represented by counsel, but wished to be represented by counsel.

A majority of our Supreme Court found that the trial court erred by proceeding with the trial with the defendant representing himself against his wishes. *Id.* at 311. The Supreme Court stated the following:

Although we believe that the conduct of the appellant had reached the point

where remedial action by the court was indicated, we believe that the trial judge had other means at his disposal short of proceeding with the trial, with which to deal with the situation in this case. The court, in its judicial discretion, could have appointed an attorney to handle appellant's defense conditioned on the payment of the legal fees by appellant. Alternatively the court could have granted appellant a further continuance to renew his 'efforts' in securing a lawyer, such efforts to be inspired by the clear warning by the court that failure to secure such counsel would be deemed an interference with the administration of justice and punishable as contempt. Either one of these actions or a combination of the two by the trial court would seem adequate to bring the appellant to trial.

*Id.* at 312. The Supreme Court acknowledged that they were convinced that the defendant was seeking to avoid trial, but noted that the right to counsel is a constitutional right of fundamental importance, a right which the defendant had not waived. *Id.* at 311.

Later in *Houston v. State*, 553 N.E.2d 117 (Ind.1990), the defendant's first court-appointed counsel withdrew from the case because he could not get along with the defendant. The second court-appointed attorney withdrew because the defendant did not want his representation. The third court-appointed counsel withdrew because the defendant rejected him and refused to cooperate with him. On June 30, 1987, trial court noted that the case had been pending since October 1985, and informed the defendant that there would be no continuances of the September 1987 trial date. The defendant agreed to hire his own counsel and to be ready to proceed to trial. The trial court warned the defendant that if he did not retain his own counsel, he would have to proceed with advisory counsel only. The defendant did not retain counsel, and the trial court reappointed the third court-appointed attorney to act in an advisory capacity.

Prior to trial, the trial court advised the defendant that he could represent himself or his third court-appointed attorney could represent him. The defendant represented himself at trial, and the court-appointed attorney served in an advisory capacity. The defendant appealed claiming that the trial court denied his right to a fair trial by limiting the function of his court-appointed attorney to advisory counsel status. Our Supreme Court held that the trial court did not abuse its discretion in requiring the defendant to represent himself at trial because the defendant's conduct—repeated refusal to cooperate with counsel and failure to retain private counsel—enabled him to frustrate the judicial process in an effort to avoid being brought to trial. 553 N.E.2d at 118. The Supreme Court found that the defendant was warned by the trial court that his refusal to retain counsel would result in him representing himself at trial with advisory counsel only. *Id.* The defendant's failure to retain counsel was construed to reflect a conscious decision to waive his right to counsel and proceed *pro se. Id.*

*Poynter v. State*, 749 N.E.2d 1122 (Ind. 2001), is another case involving a defendant who indicated that he would retain his own counsel, but after continuances were granted so that he could secure private counsel, he was tried without counsel and convicted following a bench trial. On appeal, the defendant contended that his decision to represent himself was not knowing, voluntary, or intelligent because the trial court did not warn him of the dangers and disadvantages of self-repre-

sentation. Our Supreme Court adopted the analysis in *United States v. Hoskins*, 243 F.3d 407, 410 (7th Cir.2001),[3] and found that because the defendant had not been warned of the dangers and disadvantages of self-representation, his waiver of the right to counsel was not made knowingly or intelligently, although his choice to sleep and work instead of locating an attorney potentially reflected a voluntary waiver. 749 N.E.2d at 1128. "The appellate court is to consider whether the defendant voluntarily, either verbally or by conduct, chose self-representation, and whether in so choosing the defendant made a knowing and intelligent waiver of the Sixth Amendment right to counsel." *Id.* at 1128–29. *But see Jackson v. State*, 868 N.E.2d 494 (Ind.2007) ("cannot expect a trial court to hunt down a defendant to admonish him about the dangers and disadvantages of self-representation if the defendant has made no indication to the trial court that he intends to proceed pro se and then subsequently does not show up for trial").

 We agree with the trial court's observation that although "a Defendant has a right to competent, effective counsel, if indigent, he does not have the right to abuse it." "[T]rial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case." *Illinois v. Allen*, 397 U.S. 337, 343, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). A "defendant can lose his right to be present at trial if, after he has been warned by the judge ... he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Id.*

 In the present case, Gilmore engaged in behavior that led his court-appointed attorneys to withdraw from representation. Understandably, the trial court became dissatisfied with the delay seemingly caused by Gilmore in moving the case forward. This conduct was not of the kind often associated with a finding of forfeiture of the right to counsel. Nor does this conduct fit neatly into the category of cases in which waiver of the right to counsel is found, as Gilmore repeatedly requested representation by counsel. Instead, it appears to be more along the lines of a waiver by conduct or forfeiture with knowledge. As such, Gilmore was and is entitled to a hearing during which he should be warned that if his obstreperous behavior persists, the trial court will find that he has chosen self-representation by his own conduct. Then the inquiry turns to an analysis of whether Gilmore made a knowing and intelligent waiver of his right to counsel, which includes a warning of the dangers and disadvantages of self-representation established in an on-the-record evidentiary hearing where specific findings are made. While not condoning Gilmore's apparent obstreperous conduct, because those warnings were not given to Gilmore, we conclude that the trial court erred by finding that Gilmore had waived his right to counsel. We, therefore, vacate the trial

---

3. In *Hoskins*, the Seventh Circuit Court of Appeals relied upon the considerations first announced in this circuit in *United States v. Moya–Gomez*, 860 F.2d 706, 735–36 (7th Cir. 1988), when analyzing the defendant's waiver of his right to counsel. Those considerations are: (1) the extent of the court's inquiry into the defendant's decision; (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation; (3) the background and experience of the defendant; and (4) the context of the defendant's decision to proceed *pro se*. 243 F.3d at 411.

court's order and remand for further proceedings consistent with this opinion.

Reversed and remanded.

VAIDIK, J., and MATHIAS, J., concur.