Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT:

**P. STEPHEN MILLER**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana



FILED

Dec 27 2012, 9:46 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ELBERT M. JONES, II, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A04-1204-CR-216 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Frances C. Gull, Judge
Cause No. 02D06-1108-FB-166

**December 27, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Elbert M. Jones, II ("Jones") was convicted after a jury trial in Allen County Superior Court of Class B felony robbery. Jones was sentenced to eighteen years in the Indiana Department of Correction. Jones appeals and argues that the trial court improperly denied him his Sixth Amendment right to a hearing to determine whether substitute counsel should have been appointed for him and that his sentence of eighteen years is inappropriate in light of the nature of the offense and his character.

We affirm.

### Facts and Procedural History

On July 28, 2011, at 10:44 p.m., three men entered the McDonald's in New Haven, Indiana with a firearm and robbed the McDonald's while Jones waited for them in a vehicle parked around the corner from the restaurant in a residential neighborhood. Two minutes after entering the store, the three men ran out the back door of the McDonald's.

Around the same time that evening, Herschell Halsey ("Halsey") was outside in the yard of his home in the neighborhood behind the McDonald's, and he observed a vehicle come around the corner and park on his street. He also noticed that the vehicle, a black Buick LeSabre, had a tail light out and that its headlights were still on. Approximately two minutes later, Halsey saw a man running across his backyard in the direction of the parked vehicle. Halsey yelled at the man but another man hit him in the back of his head and ordered him to lie down. At approximately the same time, Oscar Gonzalez ("Gonzalez"), who lived on the same street with Halsey, also observed a vehicle parked on the street with its headlights on and with a missing taillight. Shortly

2

thereafter, police officers arrived on the scene, and Halsey and Gonzalez informed them of what they had observed, and in Halsey's case, what had happened to him.

Officer Gordon Allen ("Officer Allen") located a black Buick LeSabre with a missing taillight approximately ten minutes after the police officers received the initial call. Officer Allen pulled the vehicle over. Jones was driving the vehicle, and three other men were inside the vehicle. The four men were patted down to discern whether they had any accessible weapons. When Officer Allen patted down Lee Davis, a passenger in Jones's vehicle, Officer Allen noticed a large bulge in his jean leg, which was revealed to be money and a McDonald's cashier's report. The four men were placed under arrest, and the vehicle was secured and towed to a police facility.

The next day Detective Henry McKinnon obtained and executed a search warrant for the vehicle. He recovered a firearm, masks, currency, and latex rubber gloves. Jones was charged with Class B felony robbery.

On August 24, 2011, public defender Jeffrey Raff ("Raff") filed his appearance for Jones. Two months later, on October 31, 2011, Jones complained to the trial court about his court-appointed attorney, and that complaint was relayed by the trial court to the Chief Public Defender, Randy Hammond ("Hammond"). Jones's complaint was that Raff refused to file a motion Jones wanted filed with the trial court. After looking into the matter, Hammond reported to the trial court that Raff had made a strategic decision not to file the motion requested by Jones, a motion challenging the officer's vehicular stop. Appellant's App. p. 41.

On January 24, 2012, Jones filed a pro se Motion for Substitute Counsel and alleged that Raff's representation was "below an objective substandard of reasonableness under prevailing professional norms" and "prejudicial[.]" Id. at 43-44. Jones alleged that there was an absence of rapport between counsel and him and that Raff had made "discriminatory and derogatory statements" to him during an attorney-client meeting. Appellant's App. p. 44. The trial court again relayed Jones's complaints to Hammond and ordered that Hammond investigate and report back to the court. Hammond responded by again referring to the pre-trial evidentiary motions that Jones wanted Raff to file and by stating that he was "not aware of any sufficient reason for substitute counsel to be appointed to Mr. Jones." Id. at 46. On March 9, 2012, Jones filed a letter with the trial court again complaining about Raff. The trial court found that no action was necessary in light of Hammond's previous findings.

After a jury trial on March 13, 2012, Jones was found guilty of Class B felony robbery while armed with a deadly weapon, and the trial court later sentenced him to eighteen years executed in the Indiana Department of Correction and to pay $2,171.45 in restitution to the McDonald's restaurant.

## I. Sixth Amendment Right to Hearing

Jones argues that the trial court denied him his Sixth Amendment right to effective assistance of counsel by failing to hold a hearing to determine whether it was appropriate to substitute counsel after he had made complaints regarding his court-appointed counsel. Specifically, Jones argues that the trial court should have held a hearing to address the lack of rapport between Jones and Raff and to address Jones's allegations of a

4

"discriminatory and derogatory statement" made by court-appointed counsel. Appellant's Br. at 8.

The record reflects that the trial court reviewed Jones's complaints and ordered Chief Public Defender Hammond to report back to the court. Hammond investigated the allegations and reported that he was "not aware of any sufficient reason for substitute counsel to be appointed to Mr. Jones." Appellants App. p. 46.

In general, "[t]he trial court has discretion to deny a defendant's request for a new court appointed attorney[,]" and we review the trial court's decision for abuse of discretion. Houze v. State, 441 N.E.2d 1369, 1371 (Ind. 1982). Under the Sixth Amendment of the United States Constitution, a defendant is entitled to effective assistance of counsel during criminal proceedings. Strickland v. Washington, 466 U.S. 668, 686 (1984) (citation omitted). However, in Johnson v. State, our supreme court held that where the defendant had alleged that the public defender had neglected his case and the trial court forwarded the complaint along to the public defender's office, "[t]he judge's failure to inquire further did not violate Johnson's Sixth Amendment right to the effective assistance of counsel." 948 N.E.2d 331, 332 (Ind. 2011), cert. denied. The supreme court noted "trial court judges often receive letters from disgruntled defendants complaining about their appointed lawyers, and many of these complaints—we are willing to assume most—will be unfounded." Id. at 338. "It would be impossible and unreasonable for a judge to investigate every such complaint." Id.

The supreme court held, however, that under the "trial court judge's inherent authority over the parties and proceedings before it[,]" when "appointed counsel has a

5

track record of the professional misconduct complained of, the judge should at minimum require assurance from the public defender's office that the issue will be resolved." Id. at 338-39. Yet, even in Johnson, where there was a history of professional misconduct by the public defender,[1] the supreme court did not state a hearing was necessary but rather only required the trial court to seek assurance from the public defender's office.

Jones concedes in his brief on appeal that if his only complaint was the failure "of counsel to file certain motions, then there is little obligation to investigate such complaints[;]" however, Jones argues that he was also demanding substitute counsel because of the lack of rapport due to the alleged "discriminatory and derogatory statements" of counsel. Appellant's Br. at 8, 10. Jones argues that he "simply wanted an attorney with whom he had rapport." Id. at 10. However, a defendant is not entitled to his choice of court-appointed counsel, Houze v. State, 441 N.E.2d 1369, 1371 (Ind. 1982), and is not entitled to counsel with whom the defendant has "rapport[.]" Morris v. Slappy, 461 U.S. 1, 13-14 (1983).

While the allegations Jones made to the trial court were serious, the trial court could discern the substance of the allegations from Jones's complaints without a hearing. The trial court inquired into the issue and had the discretion to determine whether it was necessary to appoint substitute counsel. Under the facts and circumstances before us, we hold that the Jones's Sixth Amendment right to counsel were not violated when the trial court investigated Jones's complaints regarding counsel but then denied Jones's request for substitute counsel without a hearing.

---

[1] Here, Raff, the public defender, did not have a history of professional misconduct.

6

Jones's argument that he is entitled to a hearing is based in large part on this court's decision in Gilmore v. State, 953 N.E.2d 583 (Ind. Ct. App. 2011). However, Gilmore is easily distinguishable from the present case. In Gilmore, the defendant engaged in obstreperous conduct that resulted in the withdrawal of five court-appointed attorneys, and the trial court then concluded he had waived his right to counsel due to his conduct, despite his repeated requests to be represented by counsel. This court said that before the defendant's conduct could waive his right to counsel, defendant was "entitled to a hearing during which he should be warned that if his obstreperous behavior persists, the trial court will find that he has chosen self-representation by his own conduct." Id. at 592. Here, the trial court did not view Jones's complaints as a waiver of his right to counsel, and he was represented by his court-appointed counsel at trial.

## II. Sentencing

Jones argues that his sentence of eighteen years executed in the Indiana Department of Correction is inappropriate. Under Indiana Appellate Rule 7(B), we may "revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Although we may review and revise a sentence, "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). We must give "deference to a trial court's sentencing decision, both because Rule 7(B) requires us to

give due consideration to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." Trainor v. State, 950 N.E.2d 352, 355-56 (Ind. Ct. App. 2011), trans. denied (quoting Stewart v. State, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007)) (internal quotation marks omitted).

In reviewing the appropriateness of a sentence, we consider "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." Cardwell, 895 N.E.2d at 1224. The defendant has the burden to persuade us "that the sentence imposed by the trial court is inappropriate." Id. (citing Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006)).

The maximum sentence for a Class B felony is twenty years, with an advisory sentence of ten years. Ind. Code § 35-50-2-5. Here, Jones was sentenced to eighteen years, which is less than the twenty-year maximum sentence possible for a Class B felony. Furthermore, we note that Jones already has a fairly extensive criminal history, despite being only twenty-three years of age at the time of the offense. He was previously convicted of two misdemeanors, leaving the scene of an accident and invasion of privacy, and Class C felony battery. During his sentence for his Class C felony he violated his probation and his probation was revoked. Moreover, he was released from the Indiana Department of Correction only two months prior to the present offense and was on parole when he committed the present offense.

In addition, during the robbery, Jones's accomplices held a deadly weapon to the head of the McDonald's manager and kicked another employee in the head. As the trial court noted during sentencing, "[t]he fact that [Jones] didn't go in [to the McDonald's

8

does not decrease [his] participation[.]" Sent. Tr. p. 12. We recognize the trial court's "unique perspective" and give deference to the trial court's sentencing decision. Trainor, 950 N.E.2d at 355-56. For all these reasons, we conclude Jones's sentence was appropriate in light of the nature of the offense and his character.

## Conclusion

Jones's Sixth Amendment right to effective assistance of counsel was not violated when the trial court refused Jones's request for substitute counsel without a hearing. In addition, Jones's sentence was appropriate in light of the nature of the offense and his character.

Affirmed.

KIRSCH, J. and CRONE, J., concurs.