
FILED

Mar 23 2026, 9:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



I N T H E

# Court of Appeals of Indiana

Michael C. Davis,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

March 23, 2026

Court of Appeals Case No.
25A-CR-1132

Appeal from the Floyd Superior Court

The Honorable Jason M. Mount, Special Judge

Trial Court Cause No.
22D01-1804-F4-782

**Opinion by Judge Mathias**
Judges May and Felix concur.

**Mathias, Judge.**

[1] Michael C. Davis appeals the trial court's order revoking his probation. First, Davis claims that the trial court violated his constitutional right to the assistance of counsel when it concluded that he waived that right by his conduct. Davis also argues that the court abused its discretion when the court revoked his probation and ordered him to serve 2,502 days of his previously suspended sentence.

[2] We affirm.

## Facts and Procedural History

[3] In April 2018, Davis was charged with five criminal offenses involving sex acts with his daughter and stepdaughter. The State alleged that the offenses occurred on dates between September 2013 and August 2017. On October 24, 2022, Davis pleaded guilty to Class C felony child seduction, Level 5 felony child seduction, and Class D felony dissemination of matter harmful to minors.[1] The trial court imposed an aggregate sixteen-year sentence and ordered Davis to serve 2,608 days executed in the Department of Correction and suspended 3,232 days to probation.

---

[1] The State dismissed two charges, Level 4 felony incest and Level 6 felony dissemination of matter harmful to minors, after Davis's daughter, the alleged victim of those offenses, committed suicide.

[4] During the four-year pendency of those criminal proceedings, five public defenders and one privately obtained attorney requested to withdraw their respective appearances in the case because of breakdowns in the attorney-client relationships. Davis also filed disciplinary complaints against his attorneys, the prosecutor, and the presiding judge, who recused herself from the case. Special Judge Jason Mount assumed jurisdiction of the case and presided over Davis's guilty plea hearing and sentencing.

[5] During his trial proceedings, Davis hired private counsel, who entered his appearance and filed a motion for competency evaluation on August 1, 2018. A psychologist concluded that Davis "malingered psychiatric and cognitive deficits." Appellant's App. Vol. 2, p. 97. In his opinion, Davis was competent to stand trial. But the second psychologist disagreed. At the May 20, 2019 hearing to argue Davis's competency, Davis's privately obtained counsel was allowed to withdraw his appearance, and a public defender was reassigned to Davis's case. On September 9, the trial court found Davis not competent to stand trial. During his competency restoration, medical professionals agreed that Davis attempted to "present himself as far more disabled [than] he truly was . . . ." *Id*. at 171.

[6] After Davis's competency was restored on February 28, 2020, and during a final pretrial conference, Davis informed the court that he planned to hire private counsel. His jury trial date was continued but Davis did not hire private counsel. Thereafter, the case was reassigned to a new public defender who entered his appearance on Davis's behalf on November 2, 2020. Davis's

attorney then requested a second competency evaluation, which request was granted. Davis refused to cooperate with the doctors appointed to perform the evaluation, and the court, on March 15, 2021, again found him incompetent to stand trial. The medical professionals who assisted in Davis's competency restoration believed he was malingering and feigning symptoms. Davis's competency was restored on August 27, 2021.

[7] After Davis's fourth public defender withdrew his appearance on January 18, 2022, the Chief Public Defender asked the court to advise Davis on waiver of right to counsel. At a hearing held on February 25, the trial court told Davis that if his behavior persisted, it could find that Davis forfeited his right to counsel by his conduct. Appellant's App. Vol. 3, p. 27. The court also informed Davis of the perils of self-representation and the risk of waiving his right to counsel. Davis was represented by his sixth attorney when he agreed to enter into a plea agreement with the State on September 26, 2022.

[8] The terms of Davis's probation included that he could not have any contact with a person under the age of sixteen without court approval or be present at a park or participate in an activity involving children without court approval. On May 2, 2024, the State filed a petition to revoke Davis's probation. The State alleged that Davis had visited a park and had contact with a person under the age of sixteen.

[9] The trial court held the fact-finding hearing on July 10, 2024, and Davis was represented by a public defender. During the hearing, Davis gave his attorney

new information concerning witnesses he wished to present. The trial court bifurcated the fact-finding hearing so that the State could present its case-in-chief, and Davis could call his witnesses on a later date. After the State presented its evidence, Davis and his counsel began to argue, and counsel informed the trial court that Davis indicated that he wanted a new attorney. The court noted that Davis had "strategically at the last possible moment" failed to communicate with his counsel until the date of the hearing "to create yet more delay and confusion." Appellant's App. Vol. 4, p. 38.

[10] Shortly thereafter, Davis's attorney filed a motion to withdraw his appearance. The Chief Public Defender asked the court to "once again" advise Davis on waiver of his right to counsel. *Id.* Davis requested a new public defender, the eighth attorney to represent him between the criminal and probation-revocation proceedings. He also filed a motion for change of venue and alleged that the trial judge was a bully and was prejudiced against him. Appellant's App. Vol. 3, p. 213. The trial court denied Davis's motion for change of venue but appointed another public defender, who entered his appearance in August. The court also advised Davis of the perils of self-representation and the risk of waiving his right to counsel.

[11] Two months later, Davis's attorney filed a motion to withdraw due to a breakdown in the attorney-client relationship and Davis's allegation that the attorney had violated the Rules of Professional Conduct. Davis had also filed six pro se motions in the two months that he was represented by his eighth attorney.

[12] In a hearing held on November 8, Davis argued that he had not done anything wrong and his attorney "got rid of himself . . . ." Tr. Vol. 2, p. 70. After addressing pro se motions that Davis had filed, the court also ordered another competency evaluation. The evaluators determined that Davis was competent to stand trial. They concluded that Davis was feigning cognitive and psychiatric impairment and concluded that he was malingering. The trial court then found that Davis was competent. Thereafter, the court allowed Davis's attorney to withdraw. The court then set a hearing to address whether Davis had waived his right to counsel through his conduct.

[13] At that hearing, the Chief Public Defender described Davis's conduct toward his court-appointed counsels. He testified that Davis engaged in behavior that created an adversarial relationship with his attorneys. Tr. Vol. 2, p. 126. The court concluded that Davis had forfeited his right to representation "by his persistent dilatory, malingering, obstructive and uncooperative conduct after having been repeatedly advised, admonished, and warned of the consequences of that conduct." Appellant's App. Vol. 4, p. 43. The court's written order described the three competency evaluations in the criminal and probation revocation proceedings and the history of Davis's attorneys' requests to withdraw from representing him. *Id.* at 30-44. The court specifically found that

> the defendant was warned on at least three occasions of the perils of self-representation and specifically the risk of waiver or forfeiture by conduct as outlined in *Gilmore* [*v. State*, 953 N.E.2d 583 (Ind. Ct. App. 2011)]. He nevertheless persisted in a dilatory and malingering course of action. He has caused at least five (5) attorneys, including one he hired, to withdraw from

representation due to a breakdown in the attorney-client relationship. He has filed at least four (4) disciplinary complaints and threatened at least two (2) more against attorneys and judicial officers, all of which were summarily dismissed as lacking merit. He has refused to cooperate with competency evaluations on at least four (4) occasions. He has been found to have no significant mental illness or cognitive disability by no fewer than four (4) mental health professionals—all of whom found the Defendant to be malingering and reporting symptoms when it was convenient to do so, in an apparent attempt to derail or delay the proceedings, and all of whom warn the Court that future such behavior would be a result of personality disorder or an attempt to further delay or derail the proceedings, and not mental illness or cognitive disability. Despite multiple advisements and admonishments by the Court, the Defendant continues to take action in contravention of the actions of his attorneys, refuse[s] to cooperate with attorneys, and[/]or causes a breakdown in the relationship with his attorneys. The Defendant has manufactured delay in the case by appearing at [a] hearing claiming his attorney didn't subpoena witnesses when in fact Defendant had not identified witnesses for the attorney to call. Further, he has persisted in filing pro se motions while represented by counsel, and requiring his attorney to take action in contravention of the Rules of Professional Conduct manufacturing yet another breakdown in [the] attorney-client relationship. The Court finds that the Defendant is perfectly capable of cooperating with attorneys and understanding the proceedings, he just chooses not to.

*Id.* at 42-43.

[14] On April 23, 2025, the trial court held the second half of the bifurcated revocation hearing. The public defender's office had assisted Davis with serving subpoenas for that hearing. Davis called seven witnesses and questioned them.

Davis challenged the credibility of the State's witnesses and argued that the photographic evidence only established his presence outside the fence at the park. Davis also repeatedly told the court that he wanted an attorney and the court reminded him that he had waived his right to counsel by his conduct. However, the Chief Public Defender was available during the hearing to assist Davis. The court concluded that Davis had violated the terms of his probation. The court then revoked 2,502 days of Davis's previously suspended sentence to be served in the Department of Correction.

Davis now appeals.[2]

## Davis waived his right to counsel by his conduct.

"A defendant is entitled to certain due process protections before the revocation of his probation." *Butler v. State*, 951 N.E.2d 255, 259 (Ind. Ct. App. 2011). And this includes the right to counsel. *Id*. A defendant also has a statutory right to counsel in probation revocation proceedings. Ind. Code § 35-38-2-3(f).

Here, Davis did not voluntarily waive his right to counsel. "'Waiver is an intentional and voluntary relinquishment of a known right.'" *Vonhoene v. State*,

---

[2] The State urges us to dismiss this appeal because Davis's notice of appeal was not timely filed. The State raised this same issue to our motions panel and we decline the invitation to revisit that ruling. Davis sought permission to file his belated notice of appeal one day after the deadline had passed. The trial court found that "[t]he failure to file a timely notice of appeal was not due to the fault of the defendant." Appellant's App. Vol. 4, 126. And the court gave Davis permission to file his belated notice of appeal, which he then filed with our court shortly thereafter. Davis's notice of appeal was accepted and filed on June 19, 2025.

165 N.E.3d 630, 636 (Ind. Ct. App. 2021) (quoting *Gilmore v. State*, 953 N.E.2d 583, 589 (Ind. Ct. App. 2011)). But a defendant may forfeit his right to counsel or waive his right to counsel by his conduct and Davis clearly did so.

> [F]orfeiture results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right. . . . In *United States v. McLeod*, 53 F.3d 322 (11th Cir. 1995), . . . the Eleventh Circuit concluded that a defendant who is abusive toward his attorney may forfeit his right to counsel.

* * *

> Finally, there is a hybrid situation ("waiver by conduct") that combines elements of waiver and forfeiture. Once a defendant has been warned that he will lose his attorney if he engages in dilatory tactics, any misconduct thereafter may be treated as an implied request to proceed pro se and thus, as a waiver of the right to counsel. . . . Thus, instead of "waiver by conduct," this situation more appropriately might be termed "forfeiture with knowledge."

* * *

> [F]orfeiture would appear to require extremely dilatory conduct. On the other hand, a "waiver by conduct" could be based on conduct less severe than that sufficient to warrant a forfeiture. This makes sense since a "waiver by conduct" requires that a defendant be warned about the consequences of his conduct, including the risks of proceeding pro se. . . . [A] true forfeiture can result regardless of whether the defendant has been advised of the risks of proceeding pro se. . . .

*Id.* (quoting *Gilmore*, 953 N.E.2d at 589-90).

[18] During the criminal and probation revocation proceedings, the trial court granted eight attorneys' motions to withdraw because of the breakdown in the attorney-client relationships. *See* Tr. Vol. 2, p. 136. During the probation revocation proceedings, much of the conflict between Davis and his appointed counsel revolved around Davis's insistence on calling witnesses to present testimony that lacked any relevant information about the alleged probation violations. Also, during the probation revocation proceedings, Davis insisted that his attorney file a motion to remove the trial judge or request a change of venue. The attorney refused to do so, and Davis's continued insistence on filing those motions led to a breakdown in the attorney-client relationship. The trial court warned Davis that his obstreperous behavior could result in a waiver of the right to counsel by conduct and the court advised him of the dangers and risks of self-representation.[3]

[19] The trial court bifurcated the fact-finding hearing after Davis insisted that he had witnesses he wished to present on his own behalf even though Davis had not previously provided any information about those witnesses to his attorney. Davis was represented by counsel during the State's case-in-chief, which the

---

[3] The *Gilmore* Court explained that, where a trial court believes that the defendant has waived his right to counsel by conduct, the court should conduct a hearing during which the defendant "should be warned that if his obstreperous behavior persists, the trial court will find that he has chosen self-representation by his own conduct." 953 N.E.2d at 592. The defendant must also be warned of "the dangers and disadvantages of self-representation established in an on-the-record evidentiary hearing where specific findings are made." *Id.* Davis concedes that those procedures were followed in this case. Appellant's Br. at 16.

court heard in July 2024. Due to Davis's refusal to cooperate with his attorneys, the remainder of the bifurcated hearing did not occur until April 2025. Moreover, mental health professionals determined that Davis was "malingering and reporting symptoms when it was convenient to do so, in an apparent attempt to derail or delay the proceedings," and those professionals "warn[ed] the Court that future such behavior would be a result of personality disorder or an attempt to further delay or derail the proceedings . . . ." Appellant's App. Vol. 4, p. 43.

[20] Davis's conduct in his criminal and probation revocation proceedings resulted in gross delays and was an attempt to manipulate the proceedings. *See Poynter v. State*, 749 N.E.2d 1122, 1128 (Ind. 2001). For this reason, we conclude that the trial court did not err when it determined that Davis waived his right to counsel by his conduct.

## The trial court did not abuse its discretion when it revoked Davis's probation and ordered him to serve 2,502 days of his previously suspended sentence.

[21] "Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled." *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007).

> A probation hearing is civil in nature, and the State must prove an alleged probation violation by a preponderance of the evidence. *Braxton v. State*, 651 N.E.2d 268, 270 (Ind. 1995); *see* Ind. Code § 35-38-2-3(f) (2012). When the sufficiency of evidence is at issue, we consider only the evidence most favorable to the

judgment—without regard to weight or credibility—and will affirm if "there is substantial evidence of probative value to support the trial court's conclusion that a probationer has violated any condition of probation." *Braxton*, 651 N.E.2d at 270.

*Murdock v. State*, 10 N.E.3d 1265, 1267 (Ind. 2014).

[22] The State proved by a preponderance of the evidence that Davis violated two terms of his probation. The State presented evidence that Davis had contact with children under the age of 16 and that he was present at a park without court permission. *See* Appellant's App. Vol. 3, p. 147; Tr. Vol. 2, pp. 11-19, 26-28. Davis's argument concerning the sufficiency of the evidence is merely a request to reweigh the evidence and the credibility of the witnesses.

[23] After the trial court makes a factual determination that a violation of a condition has occurred, the court "must determine if the violation warrants revocation of the probation." *Overstreet v. State*, 136 N.E.3d 260, 263 (Ind. Ct. App. 2019), *trans. denied*. The court may impose one or more of the following sanctions:

> (1) Continue the person on probation, with or without modifying or enlarging the conditions.

> (2) Extend the person's probationary period for not more than one (1) year beyond the original probationary period.

> (3) Order execution of all or part of the sentence that was suspended at the time of initial sentencing.

Ind. Code § 35-38-2-3(h).

[24] "We review the appeal from a trial court's probation determination and sanction for an abuse of discretion." *Overstreet*, 136 N.E.3d at 263 (citing *Prewitt*, 878 N.E.2d at 188). "An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances." *Id*. (citing *Smith v. State*, 963 N.E.2d 1110, 1112 (Ind. 2012)).

[25] Davis claims that the trial court abused its discretion by ordering him to serve 2,502 days of his previously suspended sentence because his presence at the park was brief and his contact with the children was incidental. Davis relies on his self-serving evidence that he was only near the park to meet a family member who was giving him food.

[26] We are not persuaded by Davis's claim that the State presented "minimal evidence of technical violations of the terms of his probation." Appellant's Br. at 21. Davis was convicted of sex offenses against his daughter and stepdaughter. The terms of his probation clearly state that he is not allowed contact with children under the age of 16 or to be present at a park. The sex offender registry coordinator described Davis's offenses as "absolutely the worst case [he had] ever seen of abuse of young teenage girls ever, of all the cases [he had] dealt with, not only sexually, physically, emotionally, psychologically. [He had] never seen anything like it, and it was horrible." Tr. Vol. 2, p. 212. Davis's violation of his probation is particularly concerning given the nature of his

offenses. For this reason, the trial court did not abuse its discretion when it ordered him to serve 2,502 days of his previously suspended sentence.

## Conclusion

[27] The trial court did not err when it concluded that Davis waived his right to counsel by his conduct. And the trial court did not abuse its discretion when it revoked Davis's probation and ordered him to serve 2,502 days of his previously suspended sentence.

[28] Affirmed.

May, J., and Felix, J., concur.

ATTORNEY FOR APPELLANT

R. Patrick Magrath
West Sixth Law
Madison, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana